## MAHAIWE BANK vs. WILLIAM DOUGLASS.

The defendant, at the request and for the accommodation of one Monson, indorsed sundry blank printed bills of exchange, which were signed by Monson, of the following form :

29 Wall St.

New York,                185

SEWELL, FERRIS & CO.

Pay to                    Dollars.

Monson afterwards struck out the words "New York" and "Sewell, Ferris & Co.," from one of them, and filled out the instrument in writing, so as to make it read as follows :—

Canaan, May 16, 1860.

29 Wall St.

To Van Antwerp & Co., No. 9 Wall street, New York City.

 Ninety days after date, I promise to

Pay to *the order of William Douglass thirty-five hundred* dollars,

*value received,* at the Metropolitan Bank, New York City.

*Forbes Monson.*

Monson procured an acceptance of the paper by Van Antwerp & Co., and its discount at bank. The face of the paper showed clearly the alterations made. When it fell due it was protested for non-payment and notice given to the defendant as indorser. In a suit brought by the bank against the defendant as indorser, it was held, that Monson had no authority, from the mere indorsement of the paper in its blank form, to make the alterations in it which he did; that its appearance was sufficient to put the bank on inquiry ; and that, as he had no authority in fact, the bank could not recover.

The blank instrument was an inchoate bill of exchange, and Monson had no implied authority to make any other instrument of it, or to make it a bill on any other parties than those named in it, although he could have completed the instrument by filling the existing blanks in any manner that he pleased.

The defendant could avail himself of this defense under the general issue, without notice, it being matter of denial and not of avoidance.

Under the rule (28 Conn., 576,) by which a general denial admits the execution of an instrument declared on unless the defendant gives notice that he does not admit it, the defendant merely admits the genuiness of his signature, and does not preclude himself from showing that the instrument declared on was not in its present form when he signed it.

If any custom prevails among banks of regarding erasures of *printed* matter in negotiable paper as no evidence of an unauthorized alteration, when the same erasures of *written* matter would be so, it has not existed so long or become so general as to be a part of the law merchant, and the defendant would not be affected by it unless he was shown to have known of the custom and to have acquiesced in it.

ASSUMPSIT, against the defendant as indorser of the following instrument :—

Canaan, May 16, 1860.

To Van Antwerp & Co., No. 9 Wall street, New York City.

Ninety days after date, I promise to pay to the order of William Douglass thirty-five hundred dollars, value received, at the Metropolitan Bank, New York City.

Forbes Monson.

The acceptance of Van Antwerp & Co. was written upon the paper, and the name of the defendant was indorsed upon it.

On the trial to the jury in the superior court, on the general issue, before *Seymour, J.,* the plaintiffs, a banking corporation located at Great Barrington in the state of Massachusetts, offered evidence to show that they had received the paper of the maker, Forbes Monson, in the regular course of business, and that they took it in good faith and with no knowledge of any infirmities attaching to it, and that it had been duly protested for non-payment and notice thereof given to the defendant.

The defendant offered himself as a witness to prove, that sometime in February, 1860, Monson applied to him to indorse for him several printed blank drafts, to enable him to make thereon drafts from time to time of from $100 to $500 each ; that he did so indorse them, the same being first signed by Monson ; that at the time he indorsed the paper in question, it was a printed blank as follows, the name of Monson being subscribed thereto in writing :—

New York                              185

SEWELL, FERRIS & CO.,

Pay to

Dollars.

Forbes Monson.

And that Monson, after the paper was so indorsed, without the defendant's knowledge or authority, had altered the same by erasing the words " New York," " Sewell, Ferris & Co.," and the figure " 5," and inserting other words and figures, so as to make the $3,500 instrument described in the declaration.

To the admission of all this testimony under the pleadings the plaintiffs objected, but the court overruled the· objection and admitted the evidence.

The plaintiffs thereupon offered evidence to prove that it was customary for banks to discount paper written on printed blanks, where the printed matter or some part of it was erased, and that such erasure did not of itself cast suspicion on the paper, and that Monson upon a similar blank to the one upon which the $3,500 instrument was made, and which was indorsed by the defendant at the same time, had erased the words " Sewell, Ferris & Co.," and filled it up as a promissory note for $650, and procured the same discounted at the Norfolk Bank, and that the defendant had afterwards paid it. And the plaintiffs claimed, and requested the court to charge the jury, that upon the admitted facts they were entitled to recover ; that, in connection with said evidence of custom, there was nothing on the face of the paper to put them on inquiry ; that the paper when indorsed by the defendant was a blank, and that if the defendant intrusted Monson with his name in blank as indorser, he was liable for any amount, on any contract adapted to the indorsement, that Monson might have filled up the blank with, if the plaintiffs took it bona fide, without notice, and for value, no matter what might have been the agreement between the defendant and Monson.

The court did not instruct the jury as claimed by the plaintiffs, but charged them that the indorsement by the defendant of such a paper as the one upon which the instrument in question was made, did not of itself, without other proof, imply an authority to Monson to strike out the name of Sewell, Ferris & Co., and change it into a promissory note ; that there was on the face of the paper evidence that the defendant intended to indorse a draft on Sewell, Ferris & Co. ; that the paper when indorsed by the defendant was not wholly a blank, but was an inchoate bill of exchange ; and that, unless the defendant had in fact given Monson authority to make the alteration, the defendant was not liable thereon, there being in the opinion of the court no authority implied as matter of

law to strike out the erased words ; but that the facts proved by the plaintiffs were proper for their consideration, as tending to show that authority was actually given by the defendant to Monson to make the instrument in question ; and that if on the whole testimony they were satisfied that Monson had such authority, they should find for the plaintiffs.

The jury having rendered a verdict for the defendant, the plaintiffs moved for a new trial.

*Buel* and *Warner*, in support of the motion.

1. Proof of the defense made was not admissible under the general issue without notice. The plea of the general issue admitted the execution of the instrument declared on, and this admission covered not merely the signatures of the defendant and maker, but their signatures to the precise instrument declared on,—that is, their signatures to it in its present form. Rule of Court, 18 Conn., 576. The defense in this case lay wholly within the knowledge of the defendant, and it was intended by the statute that in such case notice should be given, that the plaintiff may be prepared to meet it. Rev. Stat., tit. 1, § 90 ; 1 Swift Dig., 615 ; *Bolton* v. *Cummings*, 25 Conn., 410.

2. The court erred in omitting to charge the jury as requested, with regard to the effect of the custom proved. The erasure was not of *written* but of *printed* matter, and therefore, in view of the custom, raised no suspicion. Such a custom is entirely reasonable, and is constantly recognized in the case of other instruments. It is considered no evidence of an unauthorized alteration of a deed of land, that some of the printed matter is stricken out, nor of a writ, nor of a bank check. Indeed it is an every day occurrence to alter a printed bank check before it is signed, by making it a check upon a different bank. The bank had here no reason to doubt that the paper was drawn in the form in which it now appears, when it was indorsed by the defendant.

3. Independently of any custom the defendant is liable to the plaintiffs upon his indorsement. The paper was negotiable paper taken by the plaintiffs before maturity, in the regu-

lar course of business, and with no knowledge of any defense against it. The defendant had indorsed his name upon the paper when it was essentially in blank, putting it in the power of Monson to fill the blanks with any amount that he pleased, and to make the bill payable at any time or place that he pleased. It was of little importance to him that it should be drawn on Sewell, Ferris & Co., as they might refuse to accept it, while his obligation would be complete as soon as it was issued and had gone into the hands of a bona fide holder, although it had not been presented for acceptance. The question of amount, which was of far greater importance, he had shown himself indifferent about, and he would be much more likely to be indifferent as to the parties on whom the bill should be drawn. The defendant put it in the power of Monson to commit a great wrong upon the plaintiffs, and it is well settled that where one of two innocent parties must suffer, he should suffer who has put it in the power of the wrong doer to do the wrong.

*G. C. Woodruff* and *Granger*, contra.

1. The evidence was admissible under the general issue. It was not matter of confession and avoidance, but went to show that the defendant never made the promise alleged. An alteration of an instrument may always be proved under the general issue. 1 Chitty Pl., 471; *Jones* v. *Scriven*, 8 Johns., 353; *Beecker* v. *Vrooman*, 13 id., 302; *Grant* v. *Button*, 14 id., 377; *Sill* v. *Rood*, 15 id., 230. The admission of the execution of the instrument, which under the rule of the court is involved in a plea of the general issue without notice of the denial of the execution, is an admission of the signature of the party only, and does not extend to any other part of the plaintiff's case. The term "*execution* of an instrument" has a well settled technical meaning. Webster's Dict., *in verbum.* Worcester's Dict., *id.* Roscoe's N. P., 115, 118, 122, 126. 1 Swift Dig., 757.

2. The court committed no error, either in charging the jury or in omitting to charge as requested by the plaintiffs. The paper indorsed was not wholly a blank. It was in part

filled up, and so far as filled up was a bill of exchange. It was an inchoate bill of exchange. It is clear therefore that the defendant intended to indorse only a bill of exchange, and this appeared on the face of the paper when he indorsed it. The indorsement of such a paper did not of itself imply an authority to strike out the names of the drawees and make it a promissory note, or to substitute the names of other drawees and make it a bill of exchange on other parties. So far as the bill was filled up it could not be changed. The authority of Monson extended only to the filling of the blanks. A bill or note altered in a material part is void against an indorser not consenting thereto, even in the hands of an innocent holder. Chitty on Bills, 100, 103, 106 and note; *Woodworth* v. *Bank of America,* 19 Johns., 391; *Nazro* v. *Fuller,* 24 Wend., 374; *Bruce* v. *Westcott,* 3 Barb., 374; *Chappell* v. *Spencer,* 23 id., 584; *Wilson* v. *Henderson,* 9 Sm. & Marsh., 375; *Gardner* v. *Walsh,* 32 Eng. Law & Eq., 162. The court therefore properly charged the jury that, unless the defendant had in fact given authority to make the alterations, he was not liable; in other words that the law did not imply such authority, but it must be proved as a fact.

SANFORD, J. We think the evidence introduced by the defendant under his plea of the general issue was properly received.

The 90th section of the act for the regulation of civil actions (Comp. of 1854, p. 80,) provides, that under the plea of the general issue prescribed in the 88th section of the same act, the defendant may (without notice) " give his title in evidence, or any special matter of defense and justification, according to the nature of the action," excepting " matter in avoidance, or a defense consistent with the truth of the material allegations in the declaration." The material allegations in this declaration in relation to the paper in controversy, so far as the defense set up is applicable to such allegations, are, in the first count, that on the 16th of May, 1860, Monson made his *promissory note* of that date, and thereby promised to pay, at the Metropolitan Bank in the City of New York, to

the order of William Douglass, ninety days after date, for value received, the sum of $3,500, and that Douglass indorsed *the note* and delivered it so indorsed to the plaintiffs; in the second count—that on the 16th of May, 1860, Monson made his *draft or bill of exchange* of that date, *directed to Van Antwerp & Co., No. 9, Wall street, New York City,* and therein requested the said Van Antwerp & Co., ninety days after said date of said draft or bill of exchange, to pay to the order of William Douglass, at the Metropolitan Bank, &c., $3,500, value received, and then delivered the bill to said Douglass; that said Van Antwerp & Co. on the same day accepted the bill in writing on the bill, and that said Douglass indorsed and delivered it to the plaintiffs. The fourth count is, in all its material allegations, like the first, and the fifth is like the second. The seventh alleges that on the 16th day of May, 1860, Monson made and executed his certain contract in writing, in the words and figures following, to wit:—

" Canaan, May 16th, 1860. To Van Antwerp & Co., No. 9 New York City. Ninety days after date I promise to pay to the order of William Douglass thirty-five hundred dollars, value received, at the Metropolitan Bank, New York City. $3,500.                              Forbes Monson."

—and delivered said writing to said Douglass; that said Van Antwerp & Co. on the same day in writing on said contract accepted the same, according to the tenor and effect thereof; that said Douglass indorsed the writing, by which indorsement he then and there ordered and appointed the said sum of money in said writing specified to be paid to the plaintiffs, and delivered said writing so indorsed to the plaintiffs.

The special matter set up, and of which the defendant gave the evidence objected to, is set forth in the motion before us. It is in substance that in February, 1860, at Monson's request, the defendant put his name as indorser upon several blank pieces of paper, to enable Monson to make drafts on such pieces of paper from time to time, of from one to five hundred dollars; that the piece of paper upon which the instrument in question had been written was one of the pieces so

Mahaiwe Bank *v.* Douglass.

indorsed, and that, at the time he so indorsed it, it was a printed blank as follows:—

<table>
<tr><td rowspan="5">29 Wall Street.</td><td></td><td>New York,</td><td>185</td></tr>
<tr><td></td><td>Sewell, Ferris & Co.,</td><td></td></tr>
<tr><td>Pay to</td><td></td><td></td></tr>
<tr><td></td><td></td><td>Dollars.</td></tr>
<tr><td></td><td></td><td>Forbes Monson.</td></tr>
</table>

—and that after such indorsement said Monson, without the defendant's knowledge, had altered the blank form by erasing the words "New York," "Sewell, Ferris & Co.," and the figure "5," and inserting other words and figures, so as to make the thirty-five hundred dollar instrument declared on.

This is not "matter in avoidance." Avoidance in pleading is defined to be "the introduction of new or special matter, which, *admitting* the premises of the opposite party, avoids or repels his conclusions." Bouvier's Law Dict., *Avoidance.* "Matter of avoidance," says Mr. Gould in his learned and accurate treatise on Pleading, chap. 2, section 42, "is new matter which *admits the declaration to be true,* but shows nevertheless, either that the defendant was never liable to the recovery claimed against him, or that he has been discharged from his original liability, by something supervenient." See also the same treatise, chap. 1, sec. 24 ; Stephens on Pleading, 71, 181 ; Chitty on Pleading, 599.

Now the charge in two of the plaintiffs' counts is, that the defendant indorsed a *promissory note,* and in the seventh count also that he indorsed a paper, which is set out in the count, and which is a promissory note if any thing. And the charge in the second count, and in the fifth, is, that the defendant indorsed a bill of exchange drawn by Monson upon Van Antwerp & Co. Neither of these charges is confessed either expressly or by implication by the defense set up, but both of them are explicitly denied. The admission that the party indorsed an inchoate bill of exchange is very different from an admission that he indorsed a promissory note ; and the admission that a party indorsed an inchoate bill of exchange drawn on Sewell, Ferris & Co. is equally different

from an admission that he indorsed one drawn on Van Antwerp & Co. And until it can be shown that there is no material difference between bills of exchange and promissory notes, and no material difference between a bill of exchange drawn on Sewell, Ferris & Co. and one drawn on Van Antwerp & Co., we think it can not be shown that the defense set up in this case either expressly or by implication admits, or is consistent with, the truth of the material allegations in the plaintiffs' declaration, or is " matter in avoidance " within the meaning of the statute.

This defense then the defendant had a right to make and prove under the general issue.

But the plaintiffs claim that by pleading the general issue alone, the defendant by an irresistible implication admitted the execution and delivery of the very instrument described in the declaration; that the instrument when indorsed by him was in all material particulars the same as by the description of it in the declaration it now purports to be; and that in the face of that admission his evidence ought not to have been received. In support of this claim the plaintiffs rely upon the 89th section of the statute already referred to, which provides that " in all actions upon any written instrument or recognizance, claimed to have been executed or entered into by the defendant, and which is described or recited in the declaration, the plaintiff shall not be required to prove the execution or delivery of such instrument or recognizance, unless the defendant at the time of pleading shall file notice in writing that he denies such execution or delivery."

At common law when the defendant pleads the general issue only, if there is a subscribing witness to the instrument declared on, the testimony of that witness, if he is living, competent, and within the plaintiff's power, must always be produced, and if his evidence can not be obtained its absence must be accounted for. Where there was no subscribing witness, or, if there was one, his testimony could not be obtained, then by our law the hand-writing of the defendant or his acknowledgment of it might be proved by other witnesses. And except under an agreement between the parties or their

attorneys, this proof of the execution of the instrument could never be dispensed with, and the plaintiff must always come to the trial prepared to make it. But as in a great majority of the cases tried a denial of the execution of the instrument is not the defense relied on, it was thought better to require the defendant to give to the plaintiff special notice of his defense when in reality it consisted in whole or in part of a denial of the signature to the instrument, than to leave the plaintiff burdened with the necessity of preparing to prove such signature in every case ; and therefore the legislature wisely enacted the section above recited.

This statute is in substance identical with the rule of practice adopted by this court the year before the enactment of the law, and was probably suggested by that rule. See 18 Conn., 576. And in our judgment the whole force and operation of the enactment is to relieve the plaintiff from the necessity of making, in every case, formal proof of the defendant's signature to the instrument in suit.

Notwithstanding the implied admission furnished by the plea of the general issue and the want of notice, the plaintiff must still go forward with his proof in the same manner as if the defendant's signature had been expressly denied by notice and he had proved it at the outset.

Upon the construction contended for by the plaintiffs, that by pleading the general issue alone the defendant admits the execution of the very instrument declared on, the instrument itself need never be produced, because its existence, its terms, and its legal effect, as well as its execution, would be all admitted by the plea, and the plaintiff would have nothing to prove, and nothing to do but to meet and repel the very narrow defense which the defendant would be left at liberty to make.

But we suppose that, notwithstanding the admission of the *execution* of the instrument, it must still be produced ; that the defendant may still object to its being read to the jury if it is variant from the description of it in the declaration, if it has been fraudulently and materially altered without his consent, or if, being a simple contract, there was no consideration

for making it. In short the statute merely precludes the defendant from denying the genuineness of his signature upon the paper.

We think the defendant was not entitled to the charge he asked for, and that the instructions which were given to the jury were correct.

The " admitted facts " were, that the defendant put his name upon an inchoate bill of exchange, drawn and signed by Monson, on Sewell, Ferris & Co., blanks being left in the bill for the date, amount, time of payment, and the payee's name ; and that he delivered the paper thus indorsed to Monson. Upon these facts indeed an inference arose, which in favor of a *bona fide* holder of the paper was irresistible, that Monson was authorised by filling the existing blanks to complete the instrument, and to fill them so as to bind the defendant as indorser of a bill of exchange drawn by Monson on Sewell, Ferris & Co. for any sum, and payable at any time and place, which Monson chose. *Russell* v. *Langstaff*, Doug., 496. But no inference or presumption of authority to turn the bill drawn on Sewell, Ferris & Co. into one drawn on Van Antwerp & Co., or into a promissory note, could arise. Neither dictum nor decision has been cited by the learned counsel to warrant such a claim. We suppose none can be found.

It is true that bills of exchange after acceptance in many respects resemble promissory notes ; but they are a different kind of instrument. And it is obvious that Douglass might have had good reasons for preferring to indorse a bill on Sewell, Ferris & Co., rather than a promissory note made by Monson only ; and equally good reasons for preferring to indorse a bill on Sewell, Ferris & Co. rather than one on Van Antwerp & Co. What those reasons were it is of no importance to discover or suggest ; it is enough that the defendant chose to indorse a bill on Sewell, Ferris & Co., and indicated his preference on that point by unequivocal evidence upon the face of the bill itself.

Upon the " admitted facts " then the plaintiff was not entitled to the instruction asked for.

Lastly, the instructions actually given to the jury were correct.

The paper when indorsed was, as it was appropriately denominated by the judge, an inchoate bill of exchange. The name of Sewell, Ferris & Co. was printed in bold and distinct characters on the face of the paper, and so located there as to render it impossible to assign to it any other office except that of the drawees of a bill; while the other words appearing on the paper were so appropriate to a bill, and so located, as clearly to indicate the intention of the original authors of the instrument to make a bill of exchange and not a promissory note thereon.

It was then a bill of exchange begun, and so far developed that its character could not be radically changed or altered without destroying it.

Any material alteration in a bill after it is complete, made without consent of the parties whose names are on it, releases them, (Chitty on Bills, 181,) whether such alteration would operate to their prejudice or not. It is enough that the altered instrument if genuine would operate differently from the original. *Gardner* v. *Walsh*, 32 Eng. Law & Eq., 162.

That there remained upon the face of the paper after all of the erasures distinct and unmistakeable evidence of its original character, and of the radical changes it had undergone, evidence that it was originally intended for a bill of exchange on Sewell, Ferris & Co., an inspection of the paper clearly demonstrates; evidence in our judgment amply sufficient to excite distrust, and make it the duty of any one to whom the paper might be offered, to inquire when and by what authority such erasures and alterations had been made.

The presumed authority of one to whom the indorser intrusts a paper entirely blank, to write upon its face either a note or bill for whatever sum he pleases, and, in the case of an inchoate note or bill, his presumed authority to fill all blanks existing in them when indorsed, is conceded; for without the exercise of such authority the paper would be valueless, and the indorsement of it a nugatory act. But where one indorses an inchoate instrument of either kind, the pre-

sumed authority which passes from the indorser with the instrument, is only to fill up existing blanks, in order to complete the instrument begun. It can never be presumed that a special agent is authorized, not only to do what his principal has left undone, but also to undo what the principal has done, and do another thing instead of it; and the fair presumption from what this instrument obviously was originally, is, that the defendant intended to indorse a bill of exchange on Sewell, Ferris & Co., and for his own security against the substitution of any other drawees or any other kind of instrument, carefully developed the form and distinctive features of the bill in these particulars.

But it is claimed that it is customary for banks to discount paper written on printed blanks where the printed matter or some part of it has been erased, and that such erasure of printed matter does not of itself cast suspicion on the paper, or put the bank receiving it on inquiry.

We have already expressed our views of the significancy of the alterations apparent in this instrument and of the duty of the plaintiffs in regard to them, and we need only add that we think it would be an innovation upon the system of mercantile law, equally impolitic and unsupported by authority, to hold that any and every part of a bill or note may appear to be erased, and other words written upon the erasure, or in the place of the words erased, without putting the party to whom such paper is offered on inquiry, merely because the words erased were printed instead of written with a pen. Such custom we are persuaded has not yet existed so long or become so general as to make it part of the " law merchant," or charge the defendant with its consequences until he is shown to have been cognizant of its existence and to have acquiesed in its operation. It seems more in accordance with principle and with reason to hold that the effect of apparent erasures and alterations in exciting distrust and " putting upon inquiry," depends more upon the significance and importance of the words erased than upon the way in which they were first impressed upon the paper; and such we are satisfied is the rule of law.

There being, as we have already endeavored to show, no legal implication of authority in Monson to make the erasures and alterations, and the erasures and alterations made being obviously such as to excite suspicion and demand inquiry, the only remaining ground upon which the plaintiffs' claim could stand, was, that the alteration was authorized in fact; and upon the issue whether it was so authorized or not, the plaintiffs had the benefit of all their evidence, and the verdict was for the defendant.

A new trial should be denied.

In this opinion the other judges concurred.

---

# SUPREME COURT OF ERRORS.

## WINDHAM COUNTY, OCTOBER TERM, 1862.

Present,

HINMAN, C. J., SANFORD, BUTLER AND DUTTON, Js.