## EDWARD RIDDLE *vs.* HARRY STEVENS AND OTHERS.

It is well settled as the law of this state that an indorsement in blank by a third person of a note, negotiable or non-negotiable, implies a warranty that the note when due will be collectible by due diligence.

This implication is however only *prima facie*, and will yield to proof of the real character of the contract.

Notes so indorsed, however, have not the sanctity of ordinary negotiable paper and do not fall within the rules of the law-merchant; any person taking them therefore is put upon inquiry as to the real character of the contract.

Where therefore a blank negotiable note was indorsed by a party who supposed that his name had been or would be inserted as payee, and upon an understanding with the maker that the note should be used for a particular purpose, and the maker, without the knowledge of the indorser, filled it up by inserting the name of another person as payee, and such payee, with no knowledge of the facts, took the note for a valuable consideration, but for a different purpose from that intended by the indorser, it was held that the payee could not recover against the indorser. [Two judges dissenting.]

ASSUMPSIT, charging the defendants in one count as ordinary indorsers of a promissory note, and in another as indorsers, as third persons, of a note payable to the order of the plaintiff; alleging in the latter that the defendants, by their indorsement of the note in blank, promised that the note was due and payable according to its tenor and that the same should be collectible upon due diligence when it should come to maturity, that the note was not paid by the maker at maturity, and that the maker was then and had ever since remained insolvent, and that the note could not have been collected of him. The case was tried to the jury in the superior court, on the general issue, with notice, before *Phelps*, J.

On the trial the plaintiff offered in evidence the following note, which was admitted to be a renewal of a former note not indorsed by the defendants :—

" $218.59.           " New York, June 19, 1861.

" Three months after date I promise to pay to the order of E. Riddle, Two Hundred Eighteen and $\frac{59}{100}$ dollars, at my office. Value received.       " WM. L. MCDONALD."

Indorsed as follows :

                   " H. STEVENS & Co."
                   " EDWARD RIDDLE."

The defendants objected to the admission of the note in evidence under either count in the declaration, but the court overruled the objection. The plaintiff claimed, and offered evidence to prove, that McDonald, the maker of the note, in June, 1861, was indebted to him by a note previously given, of about the same amount as the one declared on, which matured on the 19th day of that month, and that he was unable to pay it at maturity, and applied by letter to the plaintiff for a renewal of the same, and that the plaintiff replied that he would renew the note, but should require McDonald to procure an endorser to the renewal note, and that he soon afterwards received from McDonald the note above described, with the defendants' indorsement in blank upon it ; to which evidence the defendants objected, but the court overruled the objection. The plaintiff further claimed, and offered evidence to prove, that he had no knowledge of the defendants or of their place of residence or business, until after the maturity of the note, and that he indorsed the same in blank under the name of the defendants, and procured it to be discounted ; that when it became due it was dishonored by the maker, and notices of such dishonor regularly prepared by a notary, and those designed for both the plaintiff and defendants forwarded by mail to the plaintiff at his residence in the city of Boston ; that he thereupon took up the note, and wrote to McDonald to ascertain the residence or place of business of the defendants, but received no answer ; that he soon afterwards went to the city of New York, and then for the first time ascertained that the defendants' residence and place of business was at Naugatuck, Connecticut, and that some ten or twelve days after receiving such information he wrote the defendants a letter informing them of the dishonor of the note. The plaintiff claimed further, and offered evidence to prove, that at the maturity of the note McDonald had become utterly insolvent, and had absconded, and that under the laws of the state of New York, where he last resided and had carried on business, no attachment upon original process could have been issued against and levied upon his property ; and claimed that under the circumstances he was under no obliga-

tion to make an effort to secure or collect the note from him, and in not having done so was guilty of no default that would operate to discharge the defendants from their liability. The defendants claimed, and offered evidence to prove, that at the time the note matured, and for several weeks afterwards, McDonald was not insolvent, but was in possession of a large amount of personal property in the city of New York, which he would have turned out to the plaintiff in payment of the note if he had been requested, and that he had not absconded, and if he had, his property might have been attached and the note thereby secured ; and claimed that the plaintiff's neglect to make an effort to collect the note from McDonald discharged the defendants, if they had been otherwise liable to the plaintiff. The defendants further claimed, and it was admitted, that they wrote their partnership name on the back of the note in blank, at Naugatuck, in this state, after the note had been signed by McDonald and dated, but before it was filled up, and that the note was immediately afterwards filled up in New York by McDonald or his clerk. The defendants also claimed, and Harry Stevens one of their firm testified, that he, Stevens, was the financial member of the firm, and wrote their copartnership name by way of indorsement in blank upon the note, at the same time that he in the same manner indorsed sundry other notes payable to their own order, which had been discounted and were held for collection by the Elm City Bank in New Haven and renewed, and that those indorsements were made at the time of and upon such renewals, and that he supposed that this note was one of that class which had been made by McDonald, with whom they had had business dealings, and whose paper they held and which he had renewed, and that he had no knowledge personally of the plaintiff, or that this note belonged to him or was to be filled up payable to his order, nor that it had been so done until they received from the plaintiff his letter informing them of the dishonor of the note ; and that neither he nor his firm intended to indorse a note to or for the benefit of the plaintiff, and that it was done by accident and mistake, and without consideration ; and that immediately on

Riddle *v.* Stevens.

the receipt of the plaintiff's letter he informed him that they had made no such indorsement, and that it must have been done by some other copartnership of the same name.

The plaintiff claimed the law to be, and asked the court to instruct the jury, that the legal effect of the defendants' writing their partnership name in blank on the back of the note, notwithstanding there was no special contract between the parties, was that of a guaranty to the plaintiff of the payment of the same, and not that of a collateral undertaking as endorsers, and that the defendants were not entitled to notice of the dishonor of the note within the legal time prescribed with reference to indorsers of negotiable paper; and that if the jury should find that the maker of the note was insolvent at its maturity, or resided where, by the laws of the state, his property was not liable to attachment on original process, the plaintiff was legally excused from bringing suit against the maker, or attempting to collect or secure the note by any proceedings against him or his estate. The court instructed the jury that the first count in the plaintiff's declaration charged the defendants in the usual form as indorsers of a negotiable promissory note, and that in the second count they were also charged as indorsers by setting out the legal effect of the indorsement of such a note by a third person who was not an original party to it, and that as no undertaking or contract of guaranty by the defendants, other than what is legally inferable from their blank indorsement, was claimed or proved, the defendants could be subjected only as indorsers; and that they were not liable as indorsers unless the jury should find that the note was knowingly and intentionally indorsed by them, and not merely by accident or mistake, and that the plaintiff forwarded to them notice of the dishonor of the note by the maker on the same day or the succeeding one, after he had ascertained their place of residence.

The jury returned a verdict for the defendants, and the plaintiff moved for a new trial for error in the charge of the court.

*W. Cothren*, in support of the motion.

1. The contract of the defendants was made in this state, and is to be governed in its construction by the laws of this state and not by those of New York. The indorsement was made at Naugatuck in this state, and was for the security of the holder, after the maker should have failed to pay. This contract was to be performed by the defendants here, where they resided, and not in the state of New York. By the law of Connecticut a blank indorsement of a negotiable note by a person not a party to it, for the security of the holder, is *prima facie* a promise to the holder that the note is due and payable according to its tenor, and can be collected of the maker when due by the use of due diligence. Such a note so indorsed is therefore admissible in evidence under a count describing the indorsement as such a guaranty, and is conclusive evidence in support of such a count in the absence of any evidence of any other special contract. *Perkins* v. *Catlin*, 11 Conn., 213 ; *Laflin* v. *Pomeroy*, id., 440 ; *Ranson* v. *Sherwood*, 26 id., 437. Here no other special contract was shown or claimed to be shown, so that the contract stands as implied by law.

2. The entire duty of the holder of such a note is to use due diligence to collect the note when it is due, if it is not paid by the maker. He is not bound to notify the guarantor. And reasonable diligence is all that is required. If the debt can be collected by suit he is bound to bring suit, but if the maker is insolvent and has no property open to attachment, or if his property is in another state by the laws of which it can not be attached, the holder is not bound to bring suit. Such a proceeding would be of no avail and would involve a useless expense. In this case the maker was a bankrupt, and all his property was in the state of New York, and by the laws of that state there could be no attachment for an ordinary debt.

3. The defendants are equitably estopped from setting up the defence that the note, after being indorsed by them, was by their neglect or mistake allowed to be used for a different purpose from that intended. The plaintiff had no knowledge or suspicion that the use made of the note was not the one

intended, or that there was any mistake whatever in the matter. He acted in entire good faith, and took the note in payment of a former one then falling due which he held against the maker. Now who shall suffer from the use made of the note? There has been no bad faith, no negligence, no fault of any kind on the part of the plaintiff. On the part of the defendants there has been the voluntary entrusting of their indorsement to a person who they knew might use it for a different purpose from that which they intended. They even trusted him so far as to give him their indorsement on a blank note. They voluntarily put it in his power to defraud somebody. In this they were guilty of negligence, if nothing more. It was great negligence for them not to see that the note was properly filled up. But even if they be regarded as equally innocent with the plaintiff, then we have simply the question, which of two innocent parties shall suffer a loss occasioned by the act of one of them. The rule in such a case is well settled, that the party shall bear the loss whose act has put it in the power of the wrongdoer to do the injury. It would be a very different thing if the indorsement were not a complete thing in itself, with a fixed and definite meaning in the law. The mere signature of the defendants' partnership name on the back of the note, the note being negotiable and they not being payees, was in itself a complete guaranty, and the defendants are to be presumed to have known that it was so.

4. The court erred in instructing the jury that the second count was to be regarded only as a count upon an indorsed note and not upon a guaranty. The contract is described as a guaranty and the form used is the same that is given in Swift's Digest for such a case. The court further erred in charging the jury that the defendants could be held only as indorsers, with the usual notice of the dishonor of an indorsed note. Also in charging them that the defendants were not liable if they did not act knowingly and intentionally in giving their indorsement as they did. The grounds on which we contend that these instructions were erroneous have already been sufficiently stated.

*Kellogg,* contra.

1. The defendants, if liable at all, could be held liable as indorsers only, under the admitted facts in this case. There was no contract of guaranty by the defendants with the plaintiff, as sureties for the maker of the note. Nor was there any consideration for such a contract. The writing of the partnership name on the back of the note, without any intention or agreement to guaranty the note to the plaintiff as sureties for the maker, was simply an indorsement in blank, and they can only be charged as indorsers. In all the cases where such an indorsement has been held to be a guaranty, there has been found to be an intention or agreement on the part of the indorser to secure the holder of the note as surety for the maker. *Beckwith* v. *Angell,* 6 Conn., 315 ; *Perkins* v. *Catlin,* 11 id., 213 ; *Laflin* v. *Pomeroy,* id., 440.

2. The plaintiff was not entitled to the instruction he claimed from the court, that the legal effect of the defendants' writing their partnership name on the back of the note, under the circumstances, was a guaranty to the payee, and not an indorsement. The most he could claim was that it should be left to the jury to say, whether the defendants indorsed the note as sureties for the maker for the benefit of the plaintiff, or as indorsers only as sureties of all the prior parties to the note. But there was no claim or proof of any intention or understanding on the part of the defendants, or between the parties to this suit, that they indorsed the note as a guaranty to the plaintiff. In the absence of any such intention or understanding, the writing their name in blank upon the note is *prima facie* an indorsement in the character of indorsers only. *Hall* v. *Newcomb,* 7 Hill, 416, 420 ; *Gilmore* v. *Spies,* 1 Barb., 158 ; *Ellis* v. *Brown,* 6 id., 282 ; *Tillman* v. *Wheeler,* 17 Johns., 326 ; *Seabury* v. *Hungerford,* 2 Hill, 80 ; *Laflin* v. *Pomeroy,* 11 Conn., 440.

3. There was no excuse in this case for the neglect of notice to the defendants of the dishonor of the note. The case shows that their place of residence was well known at the office of the maker of the note in New York, where the note was payable ; and the notary who protested it was bound to make

inquiry for the residence of the indorsers, at the place where the note was payable. Besides, the plaintiff himself neglected to send notice to the defendants for " ten or twelve days " after he ascertained their place of residence, at the very place where the note was payable, as is shown by his own testimony. 1 Parsons on Notes & Bills, 513, 532; *Lawrence* v. *Miller*, 16 N. York, 235.

DUTTON, J. This case has been presented to us as if the main question on the record was, whether a blank negotiable note which has been indorsed in blank by a person for one purpose, can be filled up by the maker without the consent of the indorser by inserting the name of another person as payee, to whose order it is made payable, and passed off to such payee for another purpose, so as to make the indorser liable to such payee. An examination of the record will show that no such question is fairly presented. But assuming that it is, a majority of the court are inclined to the opinion that the payee under such circumstances, although ignorant. of the purpose for which the indorsement was made, could not recover against the indorser.

It is unnecessary to inquire what would be the legal effect elsewhere of the indorsement of a negotiable note already filled up by one who is not a party to it. In this state, after numerous decisions, some of which can not be easily reconciled with others, it is settled law that an indorsement by one who is not a party to it, either of a negotiable or non-negotiable note, implies a warranty that the note when due will, by the use of due diligence, be collectible. *Laflin* v. *Pomeroy*, 11 Conn., 440; *Castle* v. *Candee*, 16 id., 223.

It is equally well settled that such an indorsement is only *prima facie* evidence of what the contract was between such an indorser and the holder of the note. It would yield to proof of what the real contract was, if it was of a different character. Proof is admissible even to show that the indorsement imposed no legal liability, but was put on merely for purposes of collection. So it is admissible to show that it was a guaranty, or that it imposed any other liability. An exami-

nation of the cases will also prove that the rule in this state is no part of the law-merchant. Paper so indorsed has none of the sanctity that is attached to negotiable paper as such. The indorsement is of the nature of a power of attorney, authorizing the holder of the paper, if there is no agreement to limit his authority, to write over the name the agreement which the law holds such an indorsement to imply. Some of our judges have lamented the flexibility of the rule, and have regretted that the meaning of such an indorsement was not absolutely fixed. This only shows that the rule is too well established to be shaken.

We are now prepared to see what authority is given by the indorsement of a blank negotiable note. That it would not give the holder any actual authority to make use of it contrary to the intention of the indorser is plain. But it is insisted that a stranger has a right to take it for granted that the indorsement was made after the note was filled up ; and that there is nothing to put him on his guard or to lead him to inquire for what purpose the indorsement was made.

There can be no doubt that a blank signature on a piece of paper authorises the holder of it to write certain contracts over it. In *Montague* v. *Perkins*, 22 Eng. Law & Eq. R., 516, the court held that the signer of a blank note which was stamped, would be considered as authorizing the holder to fill up the note with any amount and for any time which the stamp would authorize. This shows at once the implied authority and the limitation. It could not be contended that a mere signature of a name on the back of a blank note would authorize the holder to write over it a warranty of a horse or a receipt in full of all demands. The authority depends in a great measure upon what use it is customary to make of such signatures. In *Mahaiwe Bank* v. *Douglass*, 31 Conn., 170, the defendant indorsed a blank bill of exchange, from which the holder, who had previously signed it as drawer, erased most of the formal part, and then wrote over his own name a negotiable note payable to the defendant's order, and got it discounted as an indorsed negotiable note at the Mahaiwe Bank, which was the plaintiff in the case, and this

court held that the bank was bound at its own risk to scruti-
nize it, and to ascertain whether the defendant authorized
such a change.    There was enough, it was decided, to put the
bank on its guard, and if it trusted to the representations of
the holder it was at its own risk.

When a negotiable note, with the blank indorsement of a
person who is not a party to it, is presented to a man to
advance money upon, or receive for other purposes, he will
discover at once that the indorsement is an unusual one and
not in the ordinary course of business.    The obligation of the
indorser, which he is called upon to take as security, is of a
peculiar character.    The inquiry would at once suggest itself,
why was such an indorsement made upon such a note.    It is
apparently incompatible with the nature of such an instru-
ment.    For this reason the courts in the state of New York
will not admit that there can be but one kind of indorsement
of negotiable paper.    Mr. Abbott, in his New York Digest,
(vol. 1, p. 440, note,) after a thorough examination of the
numerous decisions which had been made in that state, comes
to the conclusion that the rule in that state is that an indorse-
ment of a negotiable note by one who is not a party to it
implies a contract as indorser only, and that he could be sued
only as indorser.    We have seen that a different rule prevails
here, but it shows how incongruous any other indorsement
than one by a party to a negotiable note seems to an observer
in a state where commercial paper prevails.    Such an indorse-
ment is calculated to create embarrassment, and to render
paper less available as negotiable paper.

For these reasons a majority of the court are inclined to
think that such an indorsement would be sufficient to put the
payee or person to whom it is offered on his guard, and require
of him, before he relies upon it, to make inquiry.

Where an instrument is thus diverted from its lawful pur-
pose one of two parties must suffer loss.    The question is, on
whom should the loss properly fall.    The indorser would
have no reason for believing that the note would be filled out
in any other way than the usual one of inserting his name as
payee.    He would not therefore be chargeable with a want of

due care. The person who should take such a note relying on such an indorsement would be chargeable with some degree of negligence. There would be enough to excite his suspicion that all was not right and lead him to make inquiry. We are inclined therefore to think that between him and the indorser the loss should fall upon him.

But as we have already intimated, we do not find this question on the record. The declaration contains two counts, one on the indorsement of a negotiable note in the usual way, the other on the indorsement by the defendants of a note payable to the order of the plaintiff. The only note offered in evidence was one payable to the order of the plaintiff indorsed by the defendants. It was admitted that the note when indorsed by the defendants was a blank one, and that it was afterwards filled up by the maker and made payable to the order of the plaintiff and not of the defendants. The motion shows that the only claim which the plaintiff made, on which any question arises, was, " that the court should instruct the jury that the legal effect of the defendants' writing their partnership name in blank on the back of the note, notwithstanding there was no special contract between the parties, was that of a guaranty to the plaintiff of the payment of the note and not that of a collateral undertaking as indorsers." The judge in his charge did not sustain this proposition. We have already seen that by the law of this state he could not. A guaranty imports a promise that the note shall be paid at all events. Assuming that the fact that the note was in blank when indorsed by the defendants made no difference as to their liability, the claim which was made by the plaintiff was one which could not have been allowed. The refusal therefore of the judge to charge as claimed by the plaintiff was not a ground for a new trial. As the plaintiff did not ask the court to leave this part of the case to the jury on any other principle of law, he can not complain now that it was not done.

The remarks of the judge with reference to the question whether the indorsement was intentional or not, apply only to the first count. But the admitted facts in the case show that there could be no recovery on that count. The defendants

evidently could not be charged as ordinary indorsers. The evidence introduced by the plaintiff himself showed also that no legal notice was given. It is unnecessary therefore to inquire whether these remarks were correct or not, as the plaintiff could not have been injured by them.

A new trial is not advised.

In this opinion HINMAN, C. J., and PARK, J., concurred. BUTLER and McCURDY, Js., dissented.

McCURDY, J. In this case the plaintiff, as a condition of taking a new note, required an indorser. McDonald sent and the plaintiff accepted the note in suit. This is payable to the plaintiff or order, signed by McDonald, and indorsed in blank by the defendants. According to the well known law of Connecticut, this instrument is to be treated as a non-negotiable note indorsed by the defendants for better security. It was taken by the plaintiff before due, for a valuable consideration, and without notice of any other facts affecting it. The plaintiff had a right to consider it as having been indorsed after it was filled up, such being the usual course. The defendants say that when so indorsed the note itself was in blank except the date and name of the maker, and that it was left by them to be filled up by McDonald and passed by him, but they " *supposed* " he would make it payable to their order and use it at the Elm City Bank.

The result of this would have been to make them indorsers of a negotiable paper, while the effect of writing it payable to the order of the plaintiff was to make them guarantors of a note not negotiable. But in many parts of the community notes of this kind are nearly as common as negotiable notes, and as well understood and as frequently used in the regular course of business, and in the absence of any particular instructions McDonald had as much right to fill the blank with one kind as with the other. The term " indorser " is applied to one who writes his name on the back of either.

Under these circumstances I had considered it an elementary proposition, that the defendants having trusted McDonald, and he having acted within the apparent scope of his author-

ity, they could not set up a secret agreement, (much less a bare *supposition,*) to defeat the action.

The law on this point rests upon two principles, (or perhaps forms of the same principle,)—first, that a man is bound by the acts of an agent done within the apparent scope of his authority, and second, that whenever of two innocent persons one must suffer from the misconduct of a third, it should be the one who has trusted him and enabled him to cheat. These principles are general and of the highest importance. They apply as well to one kind of note as to the other, and as well to the sale of a horse as to the transfer of a note.

It is said, 1 Swift's Digest, 434, in speaking of non-negotiable notes, that " while the indorsement remains in blank and *in the hands of the first assignee,* it is admissible for the assignor to show any special agreement," &c., " but when it has been filled up, *or has been transferred to another person,* no such proof would be admissible;" also, that " a subsequent indorsee can not be affected by any agreement with a prior indorsee which does not appear on the face of the instrument." In the case of *Mahaiwe Bank* v. *Douglass*, 31 Conn., 170, the court say : " The presumed authority of one to whom the indorser intrusts a paper entirely blank to write upon its face either a note or bill for whatever sum he pleases, and in case of an inchoate note or bill his presumed authority to fill all blanks existing in them when indorsed, is conceded; for without the exercise of such authority the paper would be valueless and the indorsement a nugatory act." In the case of *Russel* v. *Langstaff*, Douglass, 514, the plaintiff when he took the notes knew that they were blank at the time of the indorsement and were afterward filled up by Galley, the maker. Lord Mansfield says, " The indorsement on a blank note is a letter of credit for an indefinite sum. The defendant said ' Trust Galley to any amount, and I will be his security.' It does not lie in his mouth to say the indorsements were *irregular*." See also the opinion of Chief Justice Williams in *Norwich Bank* v. *Hyde*, 13 Conn., 284. Also *Cruchley* v. *Clarence*, 2 Maule & Selw., 90 ; *Montague* v. *Perkins*, 22 Eng. Law & Eq. R., 516 ; *Barker* v. *Sterne,* id.,

502; *Kimbro* v. *Lylle*, 10 Yerg., 417; *Torrey* v. *Fisk*, 10 Smedes & Marsh., 590.

It will be observed that there, is no claim of any fraud by McDonald, or any agreement or even understanding by him that he was to do differently from what he did, but merely that the defendants " supposed " he would.

There was no negligence on the part of the plaintiff and nothing to excite his suspicion. He demanded the note of McDonald with another name as security. He received just what he required, and it was immaterial to him whether the note which the defendants indorsed was negotiable or not; the security was the same. Notes of precisely this character are too common all over the country to create doubt or surprise, and McDonald had as we have seen as much authority to fill up the blank in one way as in the other.

But the case shows gross laches on the part of the defendants. All the other notes indorsed by them at the same time as the one in suit were made payable to their own order at the Elm City Bank before they were indorsed. If this note was to be one of the same kind why should this alone have been left by them in blank to be filled up by McDonald as he might please ?

But it is said that the plaintiff requested the court to charge that the contract of the defendants was a guaranty of *the payment of the note at all events;* and that the law does not imply this. I do not so understand the request. The plaintiff had unquestionably set out in the second count of his declaration exactly the kind of contract which the law implies from the name of the defendants being in blank on the back of the note. This in the case of a note not negotiable is usually and technically called a guaranty, to distinguish it from what is called an indorsement of a negotiable note. The acts to be done by the holders of a note with a guaranty are different from those necessary to be done by the holders of a note with a proper indorsement.

The defense was that the plaintiff had not performed the acts required in the case of an indorsement. The reply was that this was *not* an indorsement, but a guaranty, and that the plaintiff had done every thing which he was bound to do

in such a case. He therefore requested the court to charge that this contract was *one of guaranty*, but the court held that it was one of *indorsement*.

The claim was simply that this contract was a guaranty, and not that a guaranty implies payment at all events and without condition. The whole case, setting out the nature of the contract, its incidents, the conditions of a recovery, and a performance of those conditions by him, excludes the idea that the plaintiff claimed or expected the court to charge that the defendants were bound to pay the note unconditionally and at all events. The request was certainly a proper one, and the charge manifestly wrong.

It seems to me that the decision in this case will be exceedingly unfortunate in its practical effect, as it is calculated to render valueless a kind of paper extensively used and confidently relied upon among all classes of the community.

BUTLER, J. I concur in the views taken by Judge McCurdy. I am also constrained to say that I think the case was not left to the jury as it should have been. The motion recites the claims of the parties in respect to the facts, and goes on to state that, in view of the facts so claimed to be proved, the plaintiff asked the court to charge, 1st, what the *legal effect* of such an indorsement was, and 2d, that in such a case the insolvency of the maker was an excuse for not attempting to collect the note of the maker. The charge of the judge did not meet these claims or either of them; but on the other hand gave the jury to understand that, " as no undertaking or contract of guaranty by the defendants other than what is legally inferable from the blank indorsement was claimed or proved, the defendants could only be subjected as indorsers." The import of the charge as I understand it is, that a *special* contract *must* be proved in such a case, or the defendants will be mere indorsers ; or it assumes that, on the facts, the legal contract which the law imports from such a blank indorsement could not be found by them. And in either event the charge was not such as the plaintiff was entitled to have, and his case was not properly presented to the jury. I think therefore a new trial should be granted.