## Case No. 1,414.

### BINGHAM v. REDDY.

### [5 Ben. 266.] [1]

District Court, N. D. New York. June, 1871.

NEGOTIABLE INSTRUMENTS—ALTERATION OF PROMISSORY NOTE—DATE—ADDITIONAL MAKERS.

In an action brought by the assignee in bankruptcy of D. S. Wing, to set aside a mortgage executed by D. S. Wing, the plaintiff, in order to prove the insolvency of Wing at the time of mortgage was given, proved a promissory note, a copy of which is as follows: "$10,000. West Goshen, Ct., 20 May, 1868. On demand, we promise to pay to the order of E. Wing, ten thousand dollars, at E. Wing & Co.'s office, value received.   E Wing & Co.   D. S. Wing. J. B. Thompson.   H. Crandall, Jr." The note was indorsed by E. Wing, J. B. Thompson and H. Crandall, Jr. The signature of D. S. Wing was an accommodation merely. The defendant requested the court to charge that this note was not a valid obligation against D. S. Wing, because (1.) It had been altered after its signature by D. S. Wing, by the addition of the names of Thompson and Crandall as joint makers; and (2.) It had been altered after its signature by the striking out of the words "after date," those words being part of the printed blank, and the note having been signed by D. S. Wing in blank. Held, that neither of these facts made such an alteration of the note as to prevent it from being a subsisting obligation against D. S. Wing. The case of Gardner v. Walsh, 5 El. & Bl. 83, criticised.

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[In equity. Bill by Charles S. Bingham, as assignee in bankruptcy of David S. Wing, against John W. Reddy, to set aside a mortgage. Verdict for plaintiff. Defendant moves for a new trial. Denied.]

HALL, District Judge. This cause is now before me upon the motion of the defendant for a new trial of the issues tried and determined at the last May term of this court; and also upon the application of the plaintiff for a final decree in his favor, upon the pleadings, proofs and verdict.

The bill was filed to set aside a mortgage executed by the bankrupt, and which was conditioned for the payment of the sum of $2,300 in one year from the date. This mortgage was dated Sept. 2, 1869, and was, on that day, executed and acknowledged by the bankrupt, and duly recorded in the county clerk's office.

On the 21st day of the same month a petition in bankruptcy was filed against the mortgagor, and he was afterwards adjudicated a bankrupt upon such petition; the execution of such mortgage being one of the acts of bankruptcy upon which such adjudication was made.

The bill alleges that at the time the mortgage was executed David S. Wing was insolvent, and that he executed such mortgage with intent to give a preference to the defendant over his other creditors, and to defeat and delay the operation of the bankrupt act, [14 Stat. 534, § 35.] It also alleges that the defendant accepted such mortgage with a view of obtaining a preference over the other creditors of Wing; and that, at the time he received such conveyance, he had reasonable cause to believe that a fraud on the bankrupt act was intended, and that said Wing was insolvent.

The defendant's answer denied such allegations; and, under a stipulation of the parties, certain issues, based upon such allegations and denials, were ordered to be tried before a jury. They were so tried, and the jury rendered a verdict for the plaintiff upon all the issues submitted.

In order to prove the insolvency charged, the plaintiff, amongst other proof of indebtedness, proved a note of $10,000, dated May 20, 1868, signed by E. Wing & Co., and by David S. Wing, the bankrupt, and also by J. B. Thompson and H. Crandall, Junior. David S. Wing testified that he signed this note, with several others, at the request of his brother, the senior partner of the firm of E. Wing & Co., in Connecticut; that the note, which was in part printed or lithographed, was entirely filled up, with the exception of the amount and date, before he signed it.

By the testimony of J. B. Thompson, it appeared that he and Crandall put their names on the back of the note, after it had been signed by E. Wing & Co., and at the request, and for the accommodation of that

firm; and it is upon the testimony of Thompson (and not upon that testimony and the testimony of David S. Wing), and also upon the evidence furnished by the note itself, as stated by the parties in a bill of exceptions agreed to by their counsel (without the intervention of the judge, or any settlement of or signature to the bill), that the defendant moves for a new trial.

The printed or lithographed part of the note, before the addition of any writing, was in the following letters, characters, and figures:

"$                                    186 .
          After date      promise to pay to
the order of
                              dollars at
          value received."

As presented at the trial, the note read as follows:

"$10,000.  West Goshen, Ct., 20 May, 1868.

"On demand, we promise to pay to the order of E. Wing, Ten thousand dollars, at E. Wing & Co.'s office, value received.

                    "E. Wing & Co.
                    "D. S. Wing.
                    "J. B. Thompson.
                    "H. Crandall, Jr."

On the back of the note the names of E. Wing, J. B. Thompson, and H. Crandall, Jr., were indorsed.

On being shown this note, Thompson testified that he saw E. Wing & Co. sign the note; that it was signed in the firm name by Henry E. Wing, a member of the firm, at the time he (the witness) indorsed the note; that E. Wing and Mr. Crandall indorsed it at the same time; that he saw the note filled up at the time he indorsed it; that a week or two after, Henry E. Wing brought him the note, and said the bank wanted their names on the front, to make it good, as it was not negotiable on demand without; and that he then put his name on the front of the note. On his cross-examination, he stated that the note was all blank when he first saw it, except the name of David S. Wing; that it was all filled up at the time he indorsed it, and at Wing's office.

After stating this testimony, the bill of exceptions sets forth that "the defendant's counsel, at the close of the evidence, requested the court to charge that this note, in September, 1869, was not a valid obligation against David S. Wing; and that the court declined so to charge; and the defendant excepted."

As no question, except that presented by this bill of exceptions, was raised by the defendant's counsel, in opposition to the plaintiff's application for a final decree, the discussion will be mainly upon the bill of exceptions; but as the bill of exceptions does not state all the facts necessary to the proper presentation of the legal question intended to be presented, and as the granting of a new trial is a matter of discretion, the whole evidence, and the general facts of the case, may properly be considered.

The objections raised, and upon which the invalidity of the note referred to is insisted on, are: 1. That by the subsequent addition of the signatures of Thompson and Crandall, as joint makers,—some one or two weeks after the note had been signed by E. Wing & Co., and indorsed as stated,—the note was materially altered in such manner as to affect and alter the responsibility of David S. Wing; and that he was, therefore, discharged from his liability.

2. That the note—having been signed by D. S. Wing, in blank, at the request and solely for the accommodation of E. Wing & Co. —was not binding against D. S. Wing, because the words "after date" were afterwards erased; the implied authority given by D. S. Wing extending only to the filling of the blanks, and not to the erasure of any words contained in the blank signed.

Both of these objections assume what is not stated in the bill of exceptions, but which was proved on the trial, that the note in question was, as against David S. Wing, accommodation paper. The last objection also assumes that the words "after date" were stricken out after the blank was signed by D. S. Wing; and though it is insisted, and. I think, with reason, that there is no direct proof of this fact, these objections will be considered as though the facts thus assumed were sufficiently proved.

The first objection above stated was urged at the trial: and it was earnestly insisted that it was fully sustained by the case of Gardner v. Walsh, 5 El. & Bl. 83. In that case the plaintiff declared upon a note, by which the defendant, and Elizabeth Barton, and Alice Clarke, jointly and severally promised to pay to the plaintiffs, or their order, £500. The defendant pleaded (with other pleas) "that the said promissory note, at the time when the same was first made and drawn, was intended by the defendant to be, and was, made and drawn by the said Elizabeth Barton and the defendant only; and that, after the same was so made and drawn by the said Elizabeth Barton and the defendant (being the said making thereof by the defendant in the declaration mentioned), and after the said note was completed, issued, and negotiated,—that is to say, by the said Elizabeth Barton and the defendant,—the plaintiffs, without the consent of the defendant, caused the same to be added to, altered, and changed in a material part thereof, and in a material point,—that is to say, by causing the said Alice Clarke to sign the same, and become a joint maker thereof." And this plea further averred, "that the alteration was not made in correction of any mistake originally made in the making or drawing of said note, nor to further any intention of the said parties, or either of them, existing at the time when the note was first made by

the defendant, or was first issued or negotiated."

On the trial it appeared that the plaintiffs were merchants, and had business transactions with Elizabeth Barton; that they had arranged with her to give her further credit, if she would get two sureties to sign with her a promissory note; and that she had proposed the defendant and Alice Clarke as such sureties. It further appeared that Elizabeth Barton proposed to the defendant to sign the note, as her surety; that he agreed to do so, and accompanied her to the office of the plaintiffs, and there signed the note, along with Elizabeth Barton; and that Alice Clarke afterwards signed the note. It was also clearly shown that, at the time the defendant signed the note, Barton, the principal debtor, was a party to the arrangement that Alice Clarke was to sign it as an additional surety; but it was not proved, and was, perhaps, left in doubt upon the evidence, whether the defendant was or was not aware of this arrangement. The learned judge instructed the jury that, if the signature of Alice Clarke was added without the previous assent of the defendant, the plea was made out, as the addition of her signature materially altered the note. Under this direction, the jury found for the defendant, on the plea above stated; and for the plaintiffs on the other issues.

The plaintiffs moved for a new trial for misdirection, on two grounds: First, that supposing the addition of Clarke's name to be unauthorized by the defendant, it was not a material alteration in the contract; and, Secondly, that the defendant, under the circumstances, was bound to the plaintiffs by the arrangement made by Barton with them, whether he had personal knowledge of its terms or not. The court decided that the plaintiff was not entitled to a new trial on the ground first stated; and that if, after the note was a perfect instrument, according to the intention of the parties, as the joint and several note of the defendant and Elizabeth Barton, "and after it had been completed, issued and negotiated," the plaintiffs, without the consent of the defendant, had caused it to be signed by Alice Clarke, as a joint and several maker, the defendant was discharged from his liability upon it.

A new trial was, however, granted upon the second ground, with leave to the defendant to amend his fifth plea as he might be advised, confining him, nevertheless, to a single plea setting up the alleged vitiation of the note by the signature of Alice Clarke.

Upon the report of the case it would seem that the new trial was properly granted for the misdirection of the judge. As between the principal in the note and the payee, and under the evidence in the case, the note was not completed, issued and negotiated until the signature of Alice Clarke had been obtained; and therefore the plea had not been proved; and a new trial was granted.

This appears from the remarks of Mr. Justice Crampton; and, when the new trial was granted for this misdirection, leave was granted to amend the plea so as to correspond with what might be the proofs in the case, and to present the question suggested by Crampton, Justice, and also by Lord Chief Justice Campbell when he said, "It may be a question whether allowing a note to be signed in a form apparently perfect, without informing the signer of an intended addition, is not equivalent to a representation that it is perfect." The proofs would not support the plea as it stood, but might support a plea presenting the question suggested; and, therefore, when a new trial was granted upon the plaintiff's application, an amendment of the plea was authorized. On a careful consideration of the whole of the report of the case, I do not think it aids the defendant, or materially changed the rule in regard to the alteration of instruments, uniformly recognized, in England and in this country, both before and after this decision. See Byles, Bills, (3d Am. Ed.) marg. pp. 255, 256; and see, also, the form of the plea in Gardner v. Walsh, ubi supra.

The alteration of an instrument, which avoids it upon the technical and strict ground of alteration, is generally made after the instrument has had a legal existence or inception, and not before; and I am inclined to think that no such question of alteration can be raised upon the evidence in this case.

But the question, whether there was a material and unauthorized alteration of the note after it was signed by Wing, the party sought to be charged, so that he has never executed, or become legally bound by the particular instrument presented and proved, which is a somewhat different question, is presented in this case by the second objection before stated. This objection, in the form and for the reason now stated, was not, it is believed, presented at the trial; but it is now sufficiently presented by the bill of exceptions, and the application for a final decree.

It was conceded, upon the argument, that the execution of the blank note implied an authority to fill the blanks at discretion; and that E. Wing & Co. might have filled in a date prior to the actual issuing of the note. It was also conceded that it might have been made payable at any time after the date so inserted; and, as a consequence, the note might have been so drawn as to be due on the very day of its negotiation. See Mitchell v. Culver, 7 Cow. 336, and case in note; Goodman v. Simonds, 20 How. [61 U. S.] 343, 361; Bank of Pittsburgh v. Neal, 22 How. [63 U. S.] 96. But it is insisted that the words "after date" being in the blank, there was no authority to strike them out, any more than there would have been authority to strike out hundred, and insert thousand, if the note, otherwise blank, had been filled up as a note for five hundred dollars.

The question is, in substance, whether

there was a material and unauthorized alteration of the note; and whether the fact that the words "after date" had been erased, which appeared on the face of the note when offered for negotiation, was sufficient notice to the party receiving the same that the note had been altered after signature, and in a manner not authorized by David S. Wing, the bankrupt; and this question is not entirely free from doubt. Assuming that the words "on demand" had not been inserted, and that the words "after date" had not been stricken out when the note was signed by the bankrupt, the first question is, What is, in substance, the authority to the depositary and holder of such a note, so signed in blank, when neither date nor time of payment has been filled into the blank? As a general rule, it may be said that the authority is to insert such date, and such time of payment as the holder may elect, or even to omit the insertion of any specific time of payment, leaving it payable, by legal inference, on demand. Michigan Ins. Bank v. Eldred, 9 Wall. [76 U. S.] 544.

Suppose, in this case, the words "on demand" had not been written into the note, but the blank, where they are written, had been left unfilled, and the words "after date" not erased; or that the words "on demand" had been written in, and the words "after date" had not been stricken out. Or, again, suppose the note had been made payable ten days after date, and so dated that it legally fell due on the day of its negotiation, would the note have been invalid, or the rights or liabilities of the bankrupt have been different from what they now are? I am not prepared to say that they would have been; or to say, that the fact that the words "after date" were in the blank when signed, was any legal limitation to the authority of E. Wing & Co. to make the note payable on demand, or on the day of its negotiation, by such date and other words as they might select for that purpose. It would, in my judgment, operate as a most unfortunate check to the negotiation of commercial paper, if a limitation of authority, and notice of such limitation, should be inferred upon such slight and inconclusive circumstances, which would hardly excite the suspicion of the most prudent bank officer.

In the case of the Mahaiwe Bank v. Douglass, 31 Conn. 170, which was much relied on by the defendant's counsel, the whole contract had been changed after the signature of the defendant had been indorsed on a blank draft upon a specified firm. The contract had been made a Connecticut contract, instead of a New York contract, by changing the date from the city of New York, to Canaan, in Connecticut; and, instead of a draft on a firm whose name was inserted in the blank, it was made a promissory note, addressed on its face to another firm. This latter address was merely surplusage; but, as before stated, the other alterations in the form and character of the instrument were sufficient to work an entire change in its character and obligations. In the case of Ives v. Farmers' Bank, 2 Allen, 236, also much relied on, it was held that the time of payment, as well as the amount, was fixed by the blank note as signed, after which the words "three months" were inserted before the words "after date," by which the specified time of payment was changed.

Assuming, then, that the question is to be decided upon the evidence of Thompson alone, and that his testimony requires the inference that the words "after date" were stricken out at the time he indorsed the note, I still think the defendant is not, upon the bill of exceptions, entitled to a new trial, upon the ground that the blank note was filled up in a manner not authorized by David S. Wing.

I am the more willing to act on this conclusion, as I should deem it proper, in case I granted a new trial, to allow an amendment of the bill, and of the issues in this case, so as to present the question, whether the bankrupt did not give, and the defendant receive the mortgage in controversy, in contemplation of the bankrupt's insolvency; and, under the evidence upon the trial, the jury, on such an issue, would doubtless have found for the plaintiff, whether the fact of actual insolvency had or had not been proved. Besides, the appearance of the note, and the testimony of David S. Wing, the bankrupt, make it most probable that Thompson is mistaken in regard to the blank note not being filled up, even, in part, at the time he first saw it; and it is most probable that the bankrupt correctly stated that, when he signed it, it was entirely filled up, with the exception of the date and amount.

A new trial is denied, and the plaintiff is entitled to a decree, with costs to be taxed.