Greathead *v.* Walton.

———•◆•———

GEORGE GREATHEAD *vs.* CAROLINE T. WALTON.

*W* applied to the plaintiff to endorse a note for his accommodation, and the plaintiff agreed to do so if he would get the defendant, his mother, to sign it with him as joint maker. *W* thereupon applied to her and she declined to sign as joint maker, but wrote her name on the back of the note, upon an express understanding with *W* that she was not to be liable to the plaintiff, to whose order it was made payable. The note was dated on a week day, but the defendant endorsed it on Sunday. *W* afterwards carried the note to the plaintiff, who endorsed it under the name of the defendant, and returned it to *W*, who afterwards got it discounted. The plaintiff at the time of endorsing it had no knowledge that the defendant made her endorsement on Sunday, nor of the understanding that she should not be liable to him. Held that his rights were not affected by either of those facts.

The note was dated in the state of New York and payable at a bank there, but the defendant resided and made her endorsement in this state. Held that, although the note was itself to be governed by the law of New York, yet that the defendant's contract of guaranty was to be regarded as a Connecticut contract and governed by the law of this state.

Soon after the notice of the dishonor of the note the plaintiff called on the defendant to see if she would pay it, and she told him to take no notice of the protest, nor of the demand of the holder ; and that her brother, who had her son's property in his hands, was prepared to defend any suit that should be brought against the plaintiff or herself on the note. After the holder had sued the plaintiff he again applied to her and she told him to feel easy about it and pay no attention to the suit, and assured him that he should have no trouble from it. The holder afterwards recovered judgment against him for the amount of the note and he brought suit against the defendant on her guaranty. Held that she was estopped from claiming that there had been negligence in not instituting proceedings for the collection of the note from the property of the maker.

Greathead *v.* Walton.

ASSUMPSIT on a guaranty of a promissory note; brought to the Superior Court in Litchfield County, and tried to the court on the general issue, with notice.

The note was as follows:

"$2000.    Amenia, N. Y., Feb. 24, 1870.    Sixty days after date we promise to pay to the order of George Great head, Two Thousand Dollars at the First National Bank, for value received.

WILLIAM F. WALTON."

The note was endorsed as follows:

CAROLINE T. WALTON.

GEO. GREATHEAD.

The notice given under the general issue was, that proof would be offered, 1st, that the defendant endorsed the note on Sunday, the 27th of February, 1870, between the rising and setting of the sun, in the town of Salisbury in this state, and, 2d, that it was expressly understood and agreed when she endorsed the note that she should not in any event be liable to the plaintiff on the note.

The court found the following facts:

The note described in the plaintiff's declaration was made and executed by William F. Walton, a son of the defendant, at Millerton, in the county of Dutchess, and state of New York, on the day it bears date, and was understood and intended by all the parties to it to be payable at the First National Bank at Amenia in that county and state.

The plaintiff is uncle by marriage to William F. Walton, and the latter on the 24th of February, 1870, applied to him to assist him in raising money, and he promised to do so, provided Walton would procure the signature of the defendant as joint maker with him to a note payable to the order of the plaintiff at said bank, and the note was drawn with the intention and expectation on the part of both the plaintiff and Walton that it would be so signed by the defendant; and Walton, before it was endorsed by the plaintiff, took the note away for the purpose of obtaining her signature, and on the Sunday following, between the hours of one and three o'clock in the afternoon, he requested the defendant, at her residence

in the town of Salisbury in this state, to sign the note as joint·maker with himself. She refused to become a joint maker of the note, and objected to having anything to do with it on Sunday, but at the urgent solicitation of Walton, and upon the express assurance and promise·by him, which she exacted as a condition, that she should have no trouble with it, and should in no event thereby incur any obligation or liability to the plaintiff, she endorsed the note in blank. Walton soon after presented the note to the plaintiff for his endorsement as payee, which the plaintiff made, without knowledge that the defendant endorsed it on Sunday, or of the condition under which she had endorsed it, and delivered the note so endorsed by him to Walton, who negotiated it before maturity to one William F. Brown of the city of New York.

The endorsements of both the plaintiff and defendant were solely for the accommodation of Walton, and entirely without consideration.

The note at its maturity was duly presented for payment, dishonored, protested, and the plaintiff and defendant legally notified.

Brown commenced.à suit on the note against the present plaintiff as endorser, on the 13th day of May, 1870, and on the 4th day of October, 1870, obtained judgment by default in the Supreme Court in the county of Dutchess, for $2,158.30, including interest and costs, which amount was paid by the plaintiff on the 19th day of November, 1870. No other suit was ever brought by Brown against any of the parties to the note.

Walton, for the purpose of raising money to pay his liabilities, and carry on business in the city of New York, on the 28th day of February, 1870, by his deed of that date, recorded March 12th, 1870, disposed of all his property, real and personal, in this state to his uncle, Hon. William H. Barnum, who was a brother of the defendant, for the consideration of $12,000, which was a fair price for the same, of which some $4,000 was, in May and June, 1870, still unpaid and owing from Barnum to Walton, and liable to be.taken by process

of foreign attachment by Brown or any other creditor of Walton, or by the plaintiff if he had paid the note at or soon after its maturity ; but Walton had then no other property liable to attachment, and was in fact insolvent.

· The plaintiff brought no action against Walton, because on inquiry of various persons, and on unsuccessful search for property belonging to him, he believed him to be insolvent, and that a suit would be ineffectual and useless, and also because of the representations, hereinafter mentioned, made to him by the defendant and by Walton. He knew of the deed from Walton to Barnum, but made no inquiries of Barnum whether he had paid Walton for the property conveyed by the deed. He called on the defendant for payment soon after the protest of the note, and she told him to take no notice of the protest or of Brown's demand, and that if Brown sued the plaintiff or herself Barnum would be ready ; that all her son's property was in Barnum's hands, who was determined to resist the claim and contest it to the last, and that she would rather go out to work and in that way try to pay the debt than to have the plaintiff have any trouble from it. Soon after, on the 2d of May, 1870, the defendant wrote the following letter to the wife of the plaintiff in reply to one from her on the subject of the note. "May, 2d, 1870. Dear Cousin. I received your letter Saturday afternoon. Mr. Greathead is excusable for opening my letter. I received two besides that, on the same day, on the same business, one mailed Lakeville and one Lime Rock. Willie went down to see his uncle William this morning about it and he told him he should · fight it to the last. Say to your husband to take no notice of it and if they sue him or me William intends to be ready. He gave his notes to Brown for value received, and he has received no value, and there is where he, William, has got him and others that are trying to rob him. That is the reason Will has not been to see Mr. G. I thank him very much for his forbearance towards Will. Say to him that the debt at Millerton will be paid in time, and that is, when a little of this smoke passes off; if they will all be quiet until the New York business goes

by, we can see out. It seems the note has been tried on the banks and they did not pay it, and it is well they did not."

After suit was brought by Brown against the plaintiff he sent his wife to the defendant and informed her of the suit and asked her what he should do, and the defendant told her to tell him to feel easy about the matter and pay no attention to the suit; that her brother William was going to fight Brown to the last and he would take care of the suit. After the plaintiff had paid the judgment obtained against him by Brown he again applied to the defendant for satisfaction, but she declined to do anything about the matter and referred him to Mr. Barnum.

The plaintiff also, not long after the maturity of the note, called on Walton to pay it, and he declared his inability to pay, and said that all his property was in Mr. Barnum's hands because they were trying to rob him in New York, and that the plaintiff was sure of his pay. He also called on Mr. Barnum, who refused to pay any of Walton's debts growing out of his New York transactions, of which he considered this to be one, but he paid his other debts, which exhausted all the sum of $12,000 for which he purchased the property conveyed by the deed, and some $10,000 more of his own private funds.

Upon these facts the case was reserved. for the advice of this court.

*Graves* and *Andrews*, for the plaintiff.

1. The fact that the defendant made the endorsement on Sunday is not a bar to the plaintiff's recovery. The plaintiff did nothing on Sunday, nor did he know that the defendant had been guilty of breaking the Sabbath. *Tuckerman* v. *Hinckley*, 9 Allen, 452; *Lovejoy* v. *Whipple*, 18 Verm., 379; *Dickinson* v. *Richmond*, 97 Mass., 45; *Beardsley* v. *Hall*, 36 Conn., 270; *Cameron* v. *Peck*, 37 id., 555.

2. The agreement made by her son that she should not be liable to the plaintiff on her endorsement, cannot affect the plaintiff. He had no notice of it and the son was not in any manner his agent.

3. The defendant is liable on the common counts. Her letter of May 2d, 1870, is an explicit promise to pay ; and the promise was made on a sufficient consideration.

4. The defendant is estopped from claiming that the plaintiff has been guilty of laches in not instituting proceedings to enforce payment by the maker. His neglect to take such measures was really by her request, and in her letter she thanks him for his forbearance. The neglect of Brown, the holder, if there was any, cannot avail the defendant, since he had a perfect right of action against the plaintiff as an ordinary endorser, and the plaintiff, having been compelled to pay the note to him, can now recover of the defendant, if there has been no neglect of duty on his own part. Clearly in the circumstances there has been none.

*Warner* and *E. W. Seymour*, for the defendant.

1. The endorsement by the defendant, on which the plaintiff seeks to hold her liable, was made on Sunday between the rising and setting of the sun. By statute all secular business is forbidden on that day, and the contract was therefore unlawful and void. Gen. Statutes, tit. 52, sec. 1. The plaintiff in order to recover must rely upon the contract arising from the defendant's endorsement. That endorsement being an illegal act, cannot be made the foundation of a right of recovery. *Phalen* v. *Clark*, 19 Conn., 421 ; *Finn* v. *Donahue*, 35 id., 216 ; *Beardsley* v. *Hall*, 36 id., 270 ; *Cameron* v. *Peck*, 37 id., 555 ; 2 Parsons on Notes and Bills, 662.

2. The contract which the law implies from the endorsement of a negotiable note by one not a party to it, is that the note is due and payable according to its tenor, that the maker shall be of ability to pay it when it comes to maturity, and that it is collectible with the use of due diligence. And this is the only contract which the law implies in this case, in favor either of the plaintiff or Brown, the defendant not being a party to the note. If there was a failure to use due diligence in the collection of the note, the defendant was thereby released from liability. 1 Swift Dig., 434 ; *Beckwith* v. *Angell*,

6 Conn., 323; *Perkins* v. *Catlin*, 11 id., 213; *Holbrook* v. *Camp*, 38 id., 23. Was due diligence used in this case ? No suit was ever brought on the note by the holder or any one else against the maker. *Holbrook* v. *Camp*, supra. Was the neglect to bring suit legally excused by the pecuniary condition of the maker of the note ? At its maturity he was insolvent. There was, however, due him from Mr. Barnum at that time, and through the following months of May and June, $4,000, which could have been taken by foreign attachment. It was therefore collectible by the use of due diligence. We claim therefore that the failure of Brown to commence suit against the maker of the note at its maturity discharged the defendant from liability on her endorsement. Certainly it discharged her from any liability to the plaintiff if he paid the note. The plaintiff may have still been liable to Brown. He was not a stranger to the note when he endorsed it. And he knew that in law the defendant by her endorsement only assumed to be held by the use of due diligence. With that knowledge he endorsed it and agreed to pay it on due notice of its dishonor, and that, with the knowledge that if a suit was not commenced or legally excused by the holder at maturity, he would have no advantage from the defendant's endorsement, but must rely wholly upon the responsibility of the maker.

3. By the law of New York, where the plaintiff resided, and where it is to be presumed that he endorsed the note, he, being payee of the note, is held to be first endorser, irrespective of the relative location of his name on the back of the note. The rule there is unchangeable. Parol evidence is not received to show any different understanding or agreement. The plaintiff then, being payee of the note, by endorsing it assumed the obligations and risks of a first endorser, and cannot maintain this action against Mrs. Walton. *Herrick* v. *Carman*, 12 Johns., 159; *Bacon* v. *Burnham*, 37 N. York, 614; *Schafer* v. *Farmers and Mechanics' Bank*, 8 Am. Law. Reg., Nov. 1869, p. 684; Story on Prom. Notes, § 479. Such a rule is the reasonable one. If a note is presented me for endorsement and I find it payable to the order of a per-

fectly responsible person I should not hesitate to endorse it, and it would be absurd if the payee, by putting his name under mine, could sue me who endorsed the note on the strength of his responsibility.

4. And such is the legal situation of the parties according to our own law. 1st. Because by our law the payee of such a note, having endorsed it, will be held as first endorser. 2d. Because Mrs. Walton, having endorsed the note in Connecticut, is protected by the special contract she made on endorsing it, namely, that she should in no event incur any liability to the plaintiff. Such was the contract she made. The maker of the note was bound by it. The plaintiff taking the paper endorsed in blank by one not a party to it, not commercial paper, was put upon his enquiry, and was bound by the specific contract between Mrs. Walton and the maker of the note. *Riddle* v. *Stevens*, 32 Conn., 378.

5. The defendant has made no new contract with the plaintiff since the maturity of the note, nor by her conduct estopped herself from making her defense against this suit. It is found that the plaintiff brought no suit against the maker of the note because he believed it would be useless, and because of the representations made to him by the defendant and of those made by William Walton. Three reasons are given, no one of which is found to have controlled his action, but only their combined force. Unless it is found that the representations of Mrs. Walton, taken by themselves, prevented his suing the maker, she is not estopped by them, whatever they were. To constitute an estoppel not only must the representations be made, but they must control the action of the party seeking to use them as an estoppel. But what were the defendant's representations? They contained no promise on her part to pay the note. She simply told what Mr. Barnum proposed to do, as she understood it, and in effect refers the plaintiff to him. She told him William's property was in Mr. Barnum's hands, which was true. Her representations exhibit nothing but an anxiety to have the matter settled without trouble to her; and it is clear enough that the fact of William's insolvency and his representations to

the plaintiff, which are not disclosed by the record, and not the defendant's representations, deterred the plaintiff from suing William, and that he has suffered nothing and waived nothing because of the defendant's representations to him.

FOSTER, J. It appears from this record that William F. Walton, the maker of the note out of which the questions in this case arise, applied to the plaintiff to assist him in raising money. The plaintiff promised to do so provided Walton would procure the signature of the defendant as joint-maker with himself of a note payable to the order of the plaintiff. The note was then drawn, with the intention and expectation, both of the plaintiff and said Walton, that it would be so signed by the defendant; and Walton took the note for the purpose of obtaining the defendant's signature. The defendant refused to become a joint-maker of the note, but endorsed the same in blank, and delivered it to Walton upon the express assurance and promise by him that she should have no trouble with it, and should, in no event, thereby incur any obligation or liability to the plaintiff. This endorsement was made on the Sunday following the date of the note, between the hours of one and three o'clock in the afternoon. Walton afterwards brought back the note to the plaintiff, who then endorsed the same, writing his name under the name of the defendant, without notice or knowledge that the defendant's endorsement was made on Sunday, or that she had exacted of Walton, as a condition of her endorsement, that she should incur no obligation or liability to the plaintiff. Walton negotiated the note before maturity, to one William F. Brown, of the city of New York. It was duly presented for payment, was dishonored and protested, and the plaintiff and defendant were duly notified. Brown commenced a suit against the plaintiff as endorser of this note, on the 13th of May after its maturity. He obtained judgment, and the sum of $2,158.30 was paid by the plaintiff on the 19th of November, 1870.

Is the plaintiff entitled to recover this amount from the defendant?

The defendant wrote her name on this note on Sunday, and as our statute prohibits secular business on that day, under penalties, it is insisted that she has therefore incurred no liability on this note.  However flagrantly this defendant may have violated the sanctity of the Sabbath, however clear it may be that she has incurred the penalties of the law for such violation, it is quite obvious that the plaintiff is, in no sense, a participator in the transgression.   He is wholly innocent of any wrong on his part, and was wholly ignorant of any wrong on hers.   We should be slow to relieve her from liability on this ground, as it would allow her to take advantage of her own wrong; it would be even worse, for besides rewarding the guilty, it would be punishing the innocent.

The contract here sought to be enforced was one between the plaintiff and defendant.   That was not made on Sunday. There was no meeting of the minds of the parties on that day.   This objection therefore is not available to this defendant, and is without force under the circumstances of this case.

The stipulations made by the defendant, at the time she endorsed this note, to exonerate herself from all liability to the plaintiff, would certainly be important, and might have a decisive effect, if knowledge of them had been brought home to the plaintiff before he made his endorsement.   He, however, knew nothing of these stipulations; and the maker of the note, with whom these stipulations were made, was, in no sense, the plaintiff's agent.   Justice requires that what passed between the defendant and the maker of this note, who was her son, should, so far as the plaintiff is concerned, be laid out of the case.   There is nothing in the case of *Riddle* v. *Stevens*, 32 Conn., 378, inconsistent with this doctrine.

The nature and extent of the liability implied by law by the endorsement in blank of a negotiable or non-negotiable note by a third person, is so thoroughly settled in this state that its repetition is quite superfluous.   On the part of the defendant it is said that this is a New York contract, and

therefore governed by the law of New York, and that by the law of New York the defendant is not liable to the plaintiff.

That the contract between the maker and payee of this note was a New York contract admits of no doubt. It was made in New York, and was to be performed in New York. But the contract between the plaintiff and defendant is another and different contract from that between the maker and payee of this note. *Slocum* v. *Pomeroy*, 6 Cranch, 221. The record shows that so far as the defendant is concerned, this contract was made in Connecticut, where she had her domicile. Whether the plaintiff received the note thus endorsed and endorsed it himself in Connecticut or in New York, does not distinctly appear. We regard it as a Connecticut contract, governed by the law of Connecticut. Even if the plaintiff received and endorsed this note in New York, we think the character and extent of the defendant's liability are to be determined by the law of Connecticut. Story on Conf. of Laws, §§ 261, 263, 267; *Powers* v. *Lynch*, 3 Mass., 81. It is unnecessary however to decide that question. It is manifest that the defendant supposed she would incur a liability to the plaintiff by her endorsement unless she made stipulations to the contrary; which stipulations, though made, must, for the reasons already given, be laid out of the case. It is equally manifest that the plaintiff put his name on this note relying on the security given him by the defendant's name. If the law of New York would not, under the circumstances, impose any liability on the defendant, we must take it for granted that the parties entered into this contract with reference to the law of Connecticut, under which certainly a liability was incurred. "Natural justice," says Mr. Justice Blackburn in his work on Sales, "mutual convenience, and the practice of all civilized nations, require that contracts, wherever enforced, should be regulated and interpreted according to the law with reference to which they were made."

But granting that the liability implied by our law attached to this defendant by her endorsement of this note, it is insisted that she is relieved of that liability to this plaintiff, by his neglect to take the necessary legal steps to collect this

note of the maker. Those steps are too familiar to require mention. We deem those requirements of the law most wise and salutary, but the defendant, on the facts found, cannot complain of the laches of the plaintiff. Soon after the dishonor of the note, the plaintiff called on the defendant for payment, and she told him to take no notice of the protest, nor of Brown's demand; that if he should sue the plaintiff or herself, Mr. Barnum, her brother, who had all her son's property in his hands, was prepared to defend the suit. After Brown had sued the plaintiff, he again communicated with the defendant, and asked what he should do. Her reply was, that he should feel easy about the matter, and pay no attention to the suit; that her brother would take care of it, and that he was going to fight Brown to the last. She thanked the plaintiff for his forbearance toward her son, and said that she would go out to work, and in that way try to pay this debt, rather than have the plaintiff have any trouble from it.

In face of these facts, this defendant cannot be heard to complain of the negligence of the plaintiff for not enforcing his demand against the maker of this note. The plaintiff has simply yielded to the defendant's request, followed her directions. We think he is legally entitled to recover of the defendant the amount he has been compelled to pay on this note, with interest from the time of payment; nor do we, as between these parties, see any want of equity in such a decision.

The Superior Court is advised to render judgment accordingly.

In this opinion the other judges concurred.