BARNABAS ALLEN AND ANOTHER *vs.* SAMUEL H. RUNDLE AND OTHERS.

The plaintiffs had a claim for $7,000, for money lent, against a joint stock corporation. A new corporation was formed, which took its business and assumed its liabilities, but the subscriptions to its stock were not to be binding unless $250,000 was subscribed within a certain time. The time being about to expire and the subscriptions falling $30,000 short, *B*, who was already a subscriber, agreed, upon the solicitation of the other subscribers, to take the remaining $30,000 on their signing a bond of indemnity, which bond was signed by twenty-one of the stockholders and the subscription thereupon made by him. Afterwards the plaintiffs demanded of the new company payment of the $7,000, and were about to sue, when it was arranged that *B* should give them his own note for $7,000, with a guarantee on the back of it signed by the defendants, who were seven of the twenty-one signers of the bond of indemnity; which arrangement was carried out. Held that general assumpsit for money had and received would not lie in favor of the plaintiffs against the guarantors of *B's* note.

The ground on which a promissory note is evidence under the general counts is that it is presumed that money has been received by the maker. But the guarantee of the defendants created no such presumption.

And held that it could not be shown by parol that the defendants, though in form guarantors, in fact undertook thereby to obligate themselves to pay the note.

Nor that they made at the time a verbal promise to pay the debt.

And that any promise made by the defendants at any time to pay the debt would be without consideration.

And held that the doctrine of novation did not apply, inasmuch as the defendants did not owe the corporation, and were not therefore applying their own debt to the payment of the indebtedness of the corporation.

A novation does not create a new indebtedness, but simply applies an existing indebtedness in payment of a debt of the creditor; and it is a necessary incident of the transaction that the original indebtedness to the intermediate creditor, and his indebtedness to his own creditor, should be discharged.

In this case the $7,000 for which *B* gave his note to the plaintiffs, with the guarantee of the defendants, had been credited on *B's* subscription of $30,000 to the stock of the new company; but this was done by the financial agent of the company of his own accord and with no authority from *B*. Held not to bring the case within the law of novation.

ASSUMPSIT on a guarantee of a note by the defendants, with the common counts; brought to the Superior Court in Fairfield County, and tried to the court on the general issue.

On the trial the plaintiffs withdrew the special count in their declaration, and under the common counts claimed to recover the sum of $7,000, and interest thereon from the 25th day of May, 1872, with the taxes thereon that had since accrued, and offered in evidence in support of their claim the following promissory note:—

"$7,000.          Danbury, November 25th, 1871.

On demand I promise to pay Barnabas Allen and William F. Taylor seven thousand dollars, with interest semi-annually, and the taxes that may accrue on the same, for value received.

Signed,          CHARLES BENEDICT."

On the back of the note there was an endorsement as follows:—

"For value received we jointly and severally guarantee the within note good and collectible until paid. (Signed). S. H. Rundle, William P. Seeley, Andrew Hull, Isaac W. Ives, Charles Hull, Charles C. White and W. F. Lacey."

The signers of the guarantee are the defendants in the present suit.

The plaintiffs claimed that the facts and circumstances under which the note was given were such that the defendants, who were ostensibly guarantors, were not in fact such merely, but were really makers of the note; and that as such they were liable to the plaintiffs in the present action, under the count for money had and received. The defendants claimed that they were liable as guarantors only, and as such could not be holden on the common counts; that parol evidence was inadmissible to vary their liability as expressed in the contract of guaranty, or to show that they were liable in any way on the note except as guarantors, or to show

VOL. XLV.—67

that Benedict signed the note under a promise from them that he should never have it to pay, or that he was not liable thereon as maker. They also denied that any consideration had ever moved from the plaintiffs to them on which to base an action on the common counts; and there was in fact no evidence of such consideration except as hereinafter appears.

The main controversy between the parties was whether the defendants were in this action liable as makers of the note in suit; or in any way primarily liable to the plaintiffs in this action for the money specified in the note, or in their bill of particulars, which was for money lent and for money had and received.

The note in suit came into existence as follows: Prior to 1871 a joint stock corporation had done business in Danbury under the name of the Bartram & Fanton Sewing Machine Company. This company was not prosperous. The plaintiffs loaned it $8,000, and took the note of the company guaranteed till paid by certain persons, one of whom was Andrew Hull, one of the defendants. A payment of $1,000 was made on it by the company. A new joint stock corporation was projected, of much larger stock than the old one.

The object of the new company was to assume the liabilities and prosecute the business of the old company. Most of the stockholders of the old company became subscribers to the stock of the new. Charles Benedict subscribed for $5,000 of this stock, and paid for the same in cash at its par value. The defendants were also subscribers. The subscriptions were not to be binding unless $250,000 was subscribed within a certain time. This limitation had nearly expired, and $30,000 of the stock remained unsubscribed for. Benedict had taken no active part in getting up the new company, except to take $5,000 of its stock. The defendants, and others of the prominent subscribers, applied to him under these circumstances to take the $30,000 of the stock. He was in no condition to do so, either pecuniarily or in business capacity, and declined to make any further subscription. To induce him to do it the defendants and others of the subscribers promised to give him, and in fact did give him, a

bond indemnifying him against all liability by reason of his subscribing for the $30,000 of the stock of the new company. This bond was signed by the defendants and fourteen other stockholders. Under these circumstances Benedict subscribed the $30,000, with the understanding and agreement between him and the obligors that he was no more than trustee of the stock for the obligors, and that, if money was called for to pay for the same or any part thereof, the obligors were to meet the call and pay the money, and that he should be saved from doing so, and in all respects held harmless.

The plaintiffs afterwards desired payment of the $7,000 remaining due on the note of the old company, and were about to proceed to collect the same, when the following arrangement was made regarding it, Benedict in no way moving in the matter except at the solicitation of the defendants, acting for the most part through the defendants Seeley and Hull. Seeley called on Benedict and informed him that the note was being pressed for payment, and that it could be arranged by substituting his note for it, which the defendants would guarantee, and that he should have no trouble with it; that he would be safe under the bond; that this would give the defendants time to sell the $30,000 of the stock subscribed for by him, and an opportunity to pay the note from the sale. Benedict did not however consent to sign the note at this time. Seeley thereupon drew the note in suit, and put it into the hands of the defendant Hull for the purpose of having him procure Benedict to execute it. Hull called on Benedict at his residence and introduced the subject of his executing the same. Benedict was averse to doing anything about it, and informed Hull that he thought he ought not to sign the note; Hull assured him that he would be indemnified in so doing by the bond; that he himself and all the other defendants would sign their names on the back of the note for his protection, and that the note should not go out of his hands till all the defendants had so signed their names upon it; that if he would sign the note he should never be called on to pay it, and that the defendants would pay it. Benedict thereupon signed the note, and Hull took it and immediately procured

each of the defendants to sign his name on the back of it, to the following guarantee endorsed thereon: "For value received we jointly and severally guarantee the within note to be good and collectible until paid."

These facts regarding the execution of the note by Benedict were fully known to all the defendants when they signed their names on the back of the note, and to the plaintiffs when they took the note, and gave up for it the note of the old corporation, as hereinafter stated.

The note in suit, thus signed on face and back, was by the defendant Hull delivered to the defendant Seeley, who exchanged it with the plaintiffs, and took for it from them the note of the old company. The delivery of the note to the plaintiffs in exchange for the old note was with the knowledge and assent of the defendants, and was sanctioned and ratified by them. Thereupon Seeley, who was financial agent and manager of the new company, without authority from Benedict put the amount of the note to the credit of Benedict, on account of the subscription for the $30,000 of the stock. Seeley thus of himself treated the note in suit as so much cash paid by Benedict towards the $30,000 subscription. A certificate for $7,000 of the new company's stock was delivered to him.

The plaintiffs took the note in suit under a promise made by the defendants to both the plaintiffs that they would soon pay the same. And subsequently, after the note had matured, the defendants frequently promised to pay it, and never refused to do so till this suit was brought.

When the first interest fell due on the note in suit the defendant Seeley paid it. Benedict has always repudiated his liability on the note and on his subscription for $30,000 of the new stock, and Taylor, one of the plaintiffs, as counsel for Benedict, advised him not to pay the note, and that it would be bad faith in the defendants to attempt to subject him on it.

Upon these facts the case was reserved for the advice of this court.

*W. F. Taylor* and *H. S. Sanford*, for the plaintiffs.

1.   The finding shows that the original company owed the plaintiffs for money loaned the sum of $7,000, for which the plaintiffs held the notes of the company, payable to the plaintiffs, and guaranteed by Andrew Hull, one of the defendants. It also appears that the defendants were owners to a large amount of the capital stock of the company, and were obligated to the company in a sum far exceeding in amount the claim of the plaintiffs.   Also that an arrangement was made by all parties, under which the defendants were to pay the plaintiffs the claim due them, and the defendants were to be credited by the company therefor on the indebtedness due from them to the company.   In accordance with this arrangement the plaintiffs extinguished their claims against the old company, taking in lieu thereof the promise of the defendants to pay the amount of their claim.   The defendants thereupon applied the claim of the plaintiffs towards the extinguishment of their own obligation to the company, and received the full benefit of the same to their individual advantage.   This was an accord executed and was legally binding on the defendants.   1 Parsons on Cont., 187, 188, and note *t;* id., 191; *Wilson* v. *Coupland*, 5 Barn. & Ald., 228; *Thompson* v. *Percival*, 5 Barn. & Adol., 925 ; *Heaton* v. *Angier*, 7 N. Hamp., 397; *Cross* v. *Richardson*, 30 Verm., 641; *Presbyterian Society* v. *Staples*, 23 Conn., 557; *Reed* v. *Holcomb*, 31 id., 360; *Packer* v. *Benton*, 35 id., 349.

2.   During the course of this arrangement, and as collateral security for the payment of the claim, the note for $7,000, signed by Benedict and guaranteed by the defendants, was executed.   To properly show this original agreement, and only as a part of it, the Benedict note was offered in evidence, together with parol and other evidence, all forming a part of the original agreement and explanatory of it—all showing that the defendants were primarily liable.   This could be shown by parol evidence, even though the guaranty of the defendants on the note was a collateral obligation; provided the guaranty was made at the same time and became an essential ground of the credit given to the principal or direct debtor.

3 Kent Com., 122; *Leonard* v. *Vredenburgh*, 8 Johns., 29; *Bailey* v. *Freeman*, 11 id., 221; *Nelson* v. *Dubois*, 13 id., 175; *D' Wolf* v. *Rabaud*, 1 Pet., 476; *Hunt* v. *Adams*, 5 Mass., 358. The defendants admit their liability on the note as guarantors; but in case they are obliged to pay they clearly cannot recover of Benedict, and from the finding they are bound to pay and save Benedict harmless, not only from all pecuniary loss, but also from any inconvenience or trouble by reason of the same; and to force a suit to be brought against Benedict on the note would be a fraud on him.

3. This claim of the plaintiffs can be recovered in this action under the common counts for money had and received or on an account stated. 1 Parsons on Cont., 188 and note, 191 and note; *Wilson* v. *Coupland*, supra; *Thompson* v. *Percival*, supra; *Beecker* v. *Beecker*, 7 Johns., 103; *Holly* v. *Rathbone*, 8 id., 148.

*L. D. Brewster* and *S. Tweedy*, contra.

LOOMIS, J. The claim which the plaintiffs in this action seek to recover of the defendants was originally against The Bartram & Fanton Sewing Machine Company, a joint stock corporation, for a loan of $8,000, evidenced by the promissory notes of the corporation. After paying $1,000 on the notes a new corporation was formed, called "The Bartram & Fanton Manufacturing Company," with a larger capital, which was to assume the liabilities and prosecute the business of the old company. The subscriptions to the stock of the new company were not to be binding unless they aggregated a certain amount in a specified time. The time had nearly expired, and $30,000 remained to be subscribed in order to fill the condition. Benedict, who had already subscribed for $5,000 of the stock, was urged to subscribe for the remaining $30,000, and to induce him so to do the seven defendants, together with fourteen other persons, all subscribers to the stock, promised to execute, and did so execute and deliver to him, a bond of indemnity, as set forth in the finding, which Benedict accepted, and subscribed for the amount remaining.

After this the plaintiffs demanded of the new company payment of the notes held by them against the old company, and were about to enforce the collection when the defendants, being interested as stockholders in the new company, arranged the matter between the plaintiffs and the corporation by a new note dated November 25th, 1871, for the amount due the plaintiffs, signed by said Benedict, payable to the plaintiffs on demand, with interest semi-annually and the taxes, which note was guaranteed by the defendants as follows in writing on the back of the same:—"For value received we jointly and severally guarantee the within note good and collectible until paid."

The finding of facts contains a detailed statement of the negotiations which resulted in the above arrangement, and of the verbal promises at the same time made by the defendants, both to Benedict and to the plaintiffs, that they would pay the note.

It is very clear that the plaintiffs might have had, and perhaps may still have, a good claim against the defendants on their guaranty. But for purposes of the present suit this claim is abandoned, and no recovery is sought except under the common counts, predicated solely on some primary and original liability on the part of the defendants.

In abandoning the sure ground of the written guaranty, it seems to us that the plaintiffs are surrounded with legal difficulties that are insurmountable.

1. If the relations of the parties and the obligations resting on the defendants are to be determined by the note and guaranty, it must be conceded that no recovery can be had under the common counts. The note and guaranty as against the defendants are not competent evidence. The guaranty is a special contract that the note will prove good and collectible until paid, and in order to recover on it there must be a special count alleging the contract and a breach of it, which must be proved by relevant evidence. 2 Saunders' Pleading and Evidence, 545; *Mines* v. *Sculthorpe*, 2 Camp., 215; *Carney* v. *O'Neil*, 27 Mich., 495.

The ground for the admissibility of promissory notes as

evidence under the common counts is, that a presumption arises from the promise to pay money, that money has been received. *Brooks* v. *Holland*, 21 Conn., 388. But surely no such presumption, and indeed no presumption at all, as against the promisor, arises from a mere warranty that a note is good and collectible.

2. But the plaintiffs say that with the aid of parol evidence they have shown that the defendants whose names are written on the back of the note, ostensibly as guarantors, were not in fact such merely, but were really makers of the note.

But the difficulty here is, that such a fact cannot be shown by parol without utterly abrogating one of the most thoroughly established and important rules of evidence—that "no parol evidence is admissible to contradict, vary, or explain a written contract, or to show it to be different from what it purports to be on the face of it," except in case of ambiguity. 1 Swift Dig., 187; 1 Greenl. Ev., § 275; *Dale* v. *Gear*, 38 Conn., 15; *Worcester County Institution for Savings* v. *Davis*, 13 Gray, 531.

There is an anomalous class of cases where a third person, neither payee nor maker, puts his name on the back of a note before its indorsement by the payee, where by parol evidence such person may be held liable either as original promisor, guarantor or indorser, according to the nature of the transaction and the understanding of the parties. *Bryant* v. *Eastman*, 7 Cush., 113; *Benthal* v. *Judkins*, 13 Met., 267; *Good* v. *Martin*, decided by the Supreme Court of the United States, and reported in the American Law Register for February, 1878, p. 111.

But in all these cases the indorsement is in blank, and there is no written contract, and none is definitely implied by law from the indorsement.

In cases of blank indorsements, where the contract is implied by law, it has the same effect as if written, and parol evidence is not admissible to contradict or vary it, as in the cases of *Dale* v. *Gear*, supra, *Bigelow* v. *Colton* and *Lake* v. *Stetson*, 13 Gray, 310. The Supreme Court of Massachusetts,

in the recent case of *Allen* v. *Brown,* 124 Mass., 77, held that parol evidence was not admissible to show that indorsers who indorsed a promissory note before delivery to the payee, were accommodation indorsers or sureties only. See other cases to the same effect cited in the opinion by Soule, J.

3. Again, the plaintiffs, by wholly ignoring the existence of the note and written guaranty, except as forming an item in the history of the case, propose to hold the defendants on their mere verbal promise. .

Allowing the plaintiffs to have their way in this regard, the statute of frauds would be troublesome, to say the least, and the want of consideration proved would be an insuperable objection.

But the true and sufficient objection to this claim is, that by the rules of law the written contract, being clearly expressed and deliberately made, cannot be ignored, for "it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing. After this, to permit oral testimony, or prior, or contemporaneous, or subsequent conversation, in order to learn what was intended or contradict or vary what is written, would be dangerous and unjust in the extreme." *Glendale Manf. Co.* v. *Protection Ins. Co.,* 21 Conn., 37; 1 Greenl. Ev., § 275.

4. Some of the legal principles before mentioned also stand in the plaintiffs' way when they would invoke the aid of the doctrine of novation. In the place of the written evidence of the defendants' undertaking, they must substitute by parol evidence another contract, whereby the defendants directly assumed upon themselves the payment of the plaintiffs' debt against the corporation. And besides this, even the parol evidence fails to make out some of the essential elements of novation. Not only must it appear that the corporation owed the plaintiffs, but that the defendants owed the corporation, and that by the new arrangement between the parties the two original debts were absolutely discharged.

It is not even found that the defendants owed any debt to the corporation, and of course no such debt was discharged.

It is not found that the plaintiffs' debt against the corporation was discharged. It is found that the original notes were given up, which is evidence tending to show such a fact, but is by no means equivalent to finding a discharge.

5. Finally, we mention as one fatal objection to all modes of charging the defendants primarily with this debt, under the common counts, the want of consideration moving from the plaintiffs to the defendants. The court expressly finds "that there was no evidence of such consideration except as hereinafter appears." In the detailed statement of facts which follows, no such consideration is disclosed. As we have already seen, not a dollar of money or property ever passed (or was ever promised) from the plaintiffs to the defendants. All went to the corporation alone. It is true that the defendants were stockholders; but as such they had no legal identity with the company, but were in contemplation of law as much strangers and third persons as if they had never heard of such a corporation. Undoubtedly they took a deep interest in the success of the corporation, and what they verbally said and promised is to be construed with reference to this fact, and also with especial reference to the principal fact, that the Benedict note with the written guaranty of the defendants was accepted by the plaintiffs, and must have been regarded by all parties as embodying all the essential parts of the transaction.

A consideration is attempted to be shown in the fact that the amount of the old notes, given up by the plaintiffs, when the guaranteed note of Benedict was delivered to them, was afterwards credited as so much cash on Benedict's subscription, which it is said had the effect to reduce by so much the liability of the defendants on account of that subscription. There are several answers to this claim.

In the first place, it must be borne in mind that the liability referred to was a mere contingent liability, and was entered into not by the defendants merely, but by fourteen other persons, in no way concerned in this transaction, and that the nature of that liability is not to be determined by parol evidence, but by the written condition of the bond given to

Benedict. By the terms of the condition of this bond it will be seen that there was no obligation on any of the signers to pay Benedict any thing until he had first been compelled to pay upon the call of the directors, and then only upon the express proviso that Benedict should transfer to the person or persons so re-paying him a proportionate amount of the stock standing in his name.

These provisos were not complied with, and there was no certainty that any liability would ever accrue under that bond, for Benedict might choose to keep the stock himself, and pay for it without looking to the obligors for reimbursement.

But another conclusive answer is, that it nowhere appears that at the time of the execution and delivery of the Benedict note to the plaintiffs, there was any understanding or agreement whatever that the amount of the note should be credited on Benedict's subscription; and the defendants are in no way responsible for that application of the note.

The finding is explicit on this point; the language is as follows:—" Thereupon Seeley (who was financial agent and manager of said new company) without authority from Benedict put the amount of the note in suit to the credit of Benedict on account of the subscription made as aforesaid by him for said $30,000 of the stock of said new company." Seeley thus, of himself, treated the note in suit as so much cash paid by Benedict towards his $30,000 subscription to the stock of the new company.

For the foregoing reasons we advise judgment for the defendants.

In this opinion the other judges concurred.