CHRISTOPHER SPENCER AND ANOTHER *vs.* CHARLES G. ALLERTON.

New Haven and Fairfield Cos., Jan. T., 1891. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

The act of 1884 (Gen. Statutes, § 1860), provides that " the blank indorsement of a negotiable or non-negotiable note, by a person who is neither its maker nor its payee, before or after its indorsement by the payee, shall import the contract of an ordinary indorsement of negotiablé paper, as between such indorser and the payee or subsequent holders of such paper." Held—

1. That the statute intended to give to the contract of such an indorser the same certainty as to its import that the law gives to an ordinary indorsement of commercial paper.

2. That the legal contract implied by such an indorsement cannot therefore be varied by parol evidence of a different agreement.

3. That a third person, indorsing before and above the payee, is, as to him and subsequent holders, impliedly an indorser in the order in which he stands upon the paper.

As the law now stands, under the above act, if a third person indorsing a note intends to make any different contract from that of an ordinary indorser, he should write it out above his signature.

[Argued January 27th—decided April 20th, 1891.]

ACTION upon an indorsed note ; brought to the Superior Court in New Haven County, and heard before *Fenn, J.* Facts found and judgment rendered for the plaintiffs, and appeal by the defendant. The case is fully stated in the opinion.

*S. W. Kellogg,* for the appellant.

1. In the early decisions in this state, as to the effect of a blank indorsement by a third party, there appears to have been an understanding of such party that the indorsement was made as surety for the maker, for the security of the note to the payee. When such an intention appeared the indorsement was held to be a guaranty to the payee, and the legal import of such an indorsement was held to be that the note when due should be collectible by the use of due

diligence.  In *Beckwith* v. *Angell*, 6 Conn., 315, there was an express agreement by the party indorsing the note, that he would guarantee the note to the payee, in consideration of further forbearance.  In *Perkins* v. *Catlin*, 11 Conn., 213, the evidence offered with the indorsed note was that the defendant understood his indorsement to be a guaranty to the payee.  In *Laflin* v. *Pomeroy*, 11 Conn., 440, the indorser placed his name upon the back of the note in pursuance of an agreement, at the request of the payee, and was paid by the latter a special compensation for his indorsement.  In *Castle* v. *Candee,* 16 Conn., 223, the defendant had full knowledge that he was indorsing the note for the security of the payee.  The real intent of the parties could always be shown.  Parol evidence has repeatedly been held to be admissible to show the real character of the indorsement, whether it was intended to be a guaranty, an ordinary indorsement of negotiable paper, or indorsed merely for the purpose of collection.  *Perkins* v. *Catlin, supra ; Riddle* v. *Stevens*, 32 Conn., 378.  In the last case the note in suit was precisely like the one in suit here.  The defendant had indorsed a blank note, after it was signed by the maker, and before it was delivered to the payee.  The plaintiff, who was the payee, had required of the maker an indorser of the note before he would accept it, and the maker had procured the defendant's indorsement, and then sent the note to the plaintiff.  The court admitted parol evidence to show that the defendant by his indorsement did not intend to guarantee the plaintiff, and had no knowledge that his indorsement was intended to be a guaranty.  And this court held that the defendant was not liable, and that no agreement of guaranty being proved, the plaintiff could not recover.  There is no element of an agreement for guaranty in this case.  The most that can be claimed upon the finding is that the defendant indorsed Stevens's note.  And the burden of proof is upon the plaintiffs to show that the indorsement was intended to be a guaranty for their security.  Their secret intention, or their arrangement with Stevens to exchange notes, is of no sort of consequence unless that

intention and arrangement were made known to the defendant. The record is that there was never any conversation whatever between the plaintiffs and the defendant in relation to his indorsement. The finding says :—" Nor was there any evidence that the defendant had any knowledge that his indorsement of the notes was, or was intended to be, a guaranty to the plaintiffs. There was no evidence that the defendant had any knowledge of the exchange of notes by the plaintiffs and Stevens." There is not a single fact to show that the defendant had any knowledge that his blank indorsement was, or was intended to be, a guaranty to the payees of the note, or was anything more than any ordinary indorsement of negotiable paper. That was the indorsement the defendant supposed he was making, so far as the record shows. If it was intended by the parties to the note other than the defendant, that his indorsement was a guaranty for the security of the plaintiffs only, that intention should have been disclosed to the defendant. As Judge DUTTON well says in *Riddle* v. *Stevens*, " such an indorsement would be sufficient to put the payee, or person to whom it was offered, on his guard, and require of him, before he relies upon it, to make inquiry."

2. The law of Connecticut as to the legal import of an indorsement of a negotiable note by a third party, as settled by a long course of decisions, was entirely different from the law of other states, and has repeatedly been regretted or criticised by the judges of this court. See *Riddle* v. *Stevens, supra ; Castle* v. *Candee,* 16 Conn., 238. The question came up in the case of *Ætna Bank* v. *Charter Oak Life Ins. Co.,* 50 Conn., 169, whether the indorsement was under our decisions a guaranty or only an ordinary indorsement of negotiable paper. It made no difference in that case whether it was the one or the other, as the suit was brought by the bank which had discounted the paper. The note was indorsed precisely as the notes here in suit, the payee indorsing below and after the third party. This court in that case, after referring to the peculiar law of Connecticut upon the legal import of such indorsements, and their

anomalous character as differing from the law of other states, uses this language, p. 189 :—" Although it may be that in the vast increase in recent years of commercial intercourse between our own and other states and countries, this rule, confined and peculiar to Connecticut, operates to declare a contract in most instances different from the actual intent of the parties, relief is to be had only through legislative action." The relief suggested came by the statute of 1884. Gen. Statutes, § 1860. That statute was passed immediately after for the express purpose of changing the law of Connecticut and making it conform to the settled law of other states, and it was undoubtedly suggested by the remarks of this court in that decision. Before that statute the import of such an indorsement by a third party for the security of the payee was a contract of guaranty, peculiar to this state, especially in relation to negotiable paper. The statute changed the law of the state. It says that such an indorsement " shall import the contract of an ordinary indorsement of negotiable paper, as between such indorser and the payee or subsequent holders of such paper." What does that statute mean ? We contend that it means just what it says ; and that it was intended to change the long-settled law of the state to conform to the law of other states. There was the old law and the mischief to remedy, and the language of the statute is clear and plain for that purpose. It cannot mean simply that demand and notice of protest should be required in all cases of blank indorsement by third parties. That would not reach the mischief at all. If the statute was enacted, as we think, in consequence of the remarks of this court in the Ætna Bank case, it could not refer to mere demand and notice of protest ; for demand was made and notice of protest given in due form in that case. The legal import of an indorsement by a third party was settled to be one thing before that statute ; the statute made the import of such an indorsement to be an entirely different thing. Such being now the legal import of such an indorsement, the plaintiff cannot recover in this case, when the defendant had no knowledge that his indorsement

was, or was intended to be, a guaranty. Of course, it is competent for parties to make an agreement of guaranty since the statute as well as before ; but to change the legal import of the indorsement in blank the agreement must be proved by some other evidence than the mere indorsement. It is worthy of notice that in every case of guaranty in this court since the enactment of that statute, an express contract of guaranty was made and proved to hold a party as a guarantor of a note. *City Savings Bank* v. *Hopson*, 53 Conn., 453 ; *Cowles* v. *Peck*, 55 id., 251 ; *Lemmon* v. *Strong*, id., 443 ; *Loomis Institute* v. *Hurd*, 57 id., 435 ; *Tyler* v. *Waddingham*, 58 id., 375. There is nothing ambiguous in the language of that statute. It tells what this contract of blank indorsement is in the plainest terms—an "ordinary indorsement of negotiable paper." If, as we contend, the purpose of that statute was to change our peculiar law as to the effect of blank indorsements (which was no part of the law-merchant), and make it conform to the law of New York and other states, the plaintiffs in this case, whose names would be first upon this note in the regular course of indorsements of negotiable paper, cannot recover of the defendant, whose regular place is that of second indorser on the note.

*L. Harrison* and *E. Zacher*, for the appellees.

SEYMOUR, J. On September 24th, 1884, the plaintiffs, at the request of one J. C. Stevens, gave him their accommodation note for two thousand dollars, payable in three months, and agreed to give him another three months' note of the same amount at its maturity. In exchange for this note Stevens gave the plaintiffs his six months' note of the same date for two thousand dollars, indorsed by the defendant. On the 27th of December, 1884, the plaintiffs gave Stevens their second note as agreed, with which he took up the first. When the second note became due the plaintiffs paid it. On the 2d of April, 1885, Stevens, in renewal of his six months' note, gave the plaintiffs his note for one thousand dollars,

payable in two months, and his note for a like sum, payable in three months, each payable to their order at the Yale National Bank. The defendant indorsed each of these notes in blank before Stevens delivered them to the plaintiffs. Afterwards the plaintiffs indorsed them, writing their names below that of the defendant. These notes were given by Stevens to the plaintiffs as a security for the loan by the plaintiffs of the sum therein mentioned, namely, of the sum to be raised by the discount of the above mentioned accommodation notes made by the plaintiffs. At each of the times when Stevens signed the notes, namely, on September 24th, when he signed the six months' note for two thousand dollars, and on April 2d, when he signed the two notes in renewal thereof (the indorsement of which is the subject of this suit), he and one of the plaintiffs were together at Stevens's office. Before the notes were delivered to the plaintiffs Stevens called the defendant into the office, and he then indorsed the notes in the presence of Stevens and the plaintiffs. There was no conversation in relation to the indorsements, nor was there any conversation between the defendant and the plaintiffs at any other time in relation thereto. There was no evidence of any agreement between them except such as the law imports from the blank indorsement which the defendant put upon the notes, as the same appears upon them, under the circumstances and upon the facts already detailed. Nor was there any other evidence that the defendant had any knowledge that his indorsement of the notes was, or was intended to be, a guaranty to the plaintiffs. There was no evidence that the defendant had any knowledge of the exchange of notes by the plaintiffs and Stevens. The notes of April 2d, 1885, were duly presented for payment at the bank but were not paid. Notice thereof was duly given to the defendant. The plaintiffs still own the notes and they are still wholly unpaid. At their maturity the maker was insolvent and without any property exempt from execution. These are the facts in brief as they are stated in the finding. The case, after a short explanation by the counsel for the defendant, was submitted to us

on briefs, and the questions discussed relate to the liability of the defendant upon the facts found. The finding is slightly complicated. To simplify the matter we copy one of the notes with its indorsements, the other being precisely similar, except that it is payable three months after date.

"$1,000. NEW HAVEN, CT., April 2d, 1885.

" Two months after date, I promise to pay to the order of I. S. Spencer's Sons one thousand dollars at Yale National Bank, value received, with interest. J. C. STEVENS."

(Indorsed.)

" CHAS. G. ALLERTON.

" I. S. SPENCER'S SONS."

In the year 1884 the legislature passed the following act:—" The blank indorsement of a negotiable or a non-negotiable note, by a person who is neither its maker nor its payee, before or after the indorsement of such note by the payee, shall import the contract of an ordinary indorsement of negotiable paper, as between such indorser and the payee or subsequent holders of such paper." Gen. Statutes, § 1860.

Before the passage of this act, by the law of this state as declared through a long line of decisions, from *Bradley* v. *Phelps*, 2 Root, 325, to *Ætna National Bank* v. *Charter Oak Life Insurance Co.*, 50 Conn., 167, the blank indorsement of either a negotiable or a non-negotiable note by a stranger to the note, implied, *primâ facie*, a contract on the part of the indorser that the note was due and payable according to its tenor; that the maker should be of ability to pay it when it came to maturity; and that it was collectible by the use of due diligence. And this was the law, it was held in the latter case above cited, whether the indorsement by the third party was for the better security of the payee or for the purpose of getting the note discounted. The same case, commenting upon our long established law on this subject, speaks of it as peculiar to this state, no part of the law-merchant, and the anomalous existence of which, eminent judges, while admitting, have regretted. The statute was doubtless intended to deliver our law from its anomalous position and bring it into harmony with the law-merchant

as it is interpreted in the great commercial centers of our country with which we are connected in business transactions involving the daily exchange of notes, bills and all manner of negotiable securities.

The statute is before this court for the first time, and we have given it the consideration commensurate to its importance. Under it it is at once apparent that the blank indorsement of a negotiable or non-negotiable note by a person who is neither its maker nor payee, whether before or after its indorsement by the payee, no longer imports a contract that the indorser will pay the note if, on the use of due diligence, it is not collected of the maker. It is no longer a contract of guaranty. But it imports, as between such indorser and the payee or subsequent holders thereof, a contract of an ordinary indorsement of negotiable paper, which is, by the law-merchant, a contract for payment conditioned on due presentment to the maker for payment and due notice of dishonor.

The full contract which the general commercial law implies from the indorsement of a negotiable promissory note on the part of the indorser, with and in favor of the indorsee and every subsequent holder to whom the note is transferred, is—(1) that the instrument itself and the antecedent signatures thereon are genuine ; (2) that he, the indorser, has a good title to the instrument; (3) that he is competent to bind himself by the indorsement as indorser ; (4) that the maker is competent to bind himself to the payment, and will, upon due presentment of the note, pay it at maturity, or when it is due ; (5) that if, when duly presented, it is not paid by the maker, he, the indorser, will, upon due and reasonable notice given him of the dishonor, pay the same to the indorsee or other holder. Story on Prom. Notes, § 135.

Into this contract, under our statute, the indorser of a note, either negotiable or non-negotiable, though a stranger thereto, impliedly comes, as between himself and the payee or subsequent holder.

Thus far there is no difficulty and it is evident that *primâ*

*facie* at least, the defendant is an ordinary indorser and not a guarantor of the notes.

But the facts in this case require us to consider the provision of the statute that the indorsement therein mentioned shall import a contract of ordinary indorsement between the parties named, whether it stand before or after the indorsement by the payee.

Here the plaintiffs indorsed the note after the defendant, and the order of their names upon it accords with the fact. Such an indorsement falls within what BIGELOW, J., in *Clapp* v. *Rice*, 13 Gray, 403, calls "an anomalous class of cases," and which the text books generally call "irregular indorsements." It is impossible to harmonize the existing decisions in respect to the import of such an indorsement; they are very numerous, diverse and conflicting. Our statute may render much of the discussion of other jurisdictions valueless to us, except as a guide to its construction, if, upon examination, its language should appear ambiguous.

Does the statute, then, intend to go any further than simply to declare that, irrespective of the position of his name, a third person who puts his name on the back of a note is to be held as an ordinary indorser, and not as a guarantor? Or do the other provisions clearly indicate a purpose to leave no question open which would turn upon the relative position of the indorsements; and to provide that such third party, though indorsing before and above the payee, is, nevertheless, *quoad* him and subsequent holders, impliedly an indorser precisely in the order in which he stands upon the note?

We unhesitatingly incline to the latter construction.

The language of the statute standing by itself, and also as construed in the light of the greater weight of authority, seems to leave no room for doubt. Daniels, in his work on Negotiable Instruments, treating of the various decisions relating to the transfer of notes by indorsement, says, (sec. 713):—"When nothing appears but the instrument itself bearing a third person's name before the payee's, in a suit by the indorsee of the payee, the question next arises, what

is to be presumed to have been the contract and liability of such a person? It will be presumed in the first place, from the fact that the name is before that of the payee in order, that it was placed there before his in point of time, and was placed upon the note in its inception with a view of strengthening its credit with the payee and inducing him to take it; and, for the reason that such third person never was the legal holder of the paper, it is held by a number of authorities that he cannot be deemed an indorser, and must be regarded, *primâ facie*, as a joint maker. By others it is held that he is *primâ facie* a surety or guarantor, using those terms as the equivalent of joint maker; others consider that he is *primâ facie* only secondarily liable as a guarantor; while very many regard him as assuming the liability of a second indorser." "But," says the author, (sec. 714,) "it would seem to us that such a party ought to be regarded as *first* indorser. If he intended to be *second* indorser he should have refrained from putting his name on the note until it was first indorsed by the payee. By placing it first he enables the payee to place his own afterwards; and *primâ facie* the facts would seem to indicate such intention. There is nothing in the objection that there is no title in him to indorse away. Prior parties could not be sued without the payee's indorsement; but he, being an indorser, can be sued by any one deriving title under him. In fact his position seems to render his liability strictly analogous to that of the drawer of a bill upon the maker in favor of the payee, and so to regard it simplifies, as it seems to us, a question which, unless such analogy be followed, is exceedingly complicated and difficult." "When, (sec. 716,) the note is sued upon by the payee, it is held that the idea of the party before him being bound as an indorser is excluded. But this doctrine does not seem to us correct. The indorsement, it is true, is an irregular one; but it is quite similar to a bill drawn by the indorser on the maker, and to follow that analogy in all regards seems to us the simplest and most reasonable solution of the question. And there are a number of cases which regard such a party's liability as *primâ facie* that of an indorser."

Judge STORY, discussing the various decisions concerning irregular indorsements, says :—" When the note is negotiable and is indorsed in blank by a third person, not being the payee or a prior indorsee thereof, there, in the absence of any controlling proof, it is presumed that such person means to bind himself in the character of an indorser, and not otherwise, and precisely in the order and manner in which he stands on the note. If the note is not negotiable and the indorsement in blank is not a part of the original transaction, but subsequently made, then, in the absence of the like controlling proofs, it is deemed a mere guaranty, and the indorser liable only as guarantor." Story on Prom. Notes, § 480.

Randolph, in his recent treatise on Commercial Paper, goes extensively into the subject of irregular indorsements. Premising that it is a matter of frequent occurrence, in the United States especially, that one who is neither maker nor payee of a note places his name on the back of it at the time of its inception, he says the legal effect of such indorsements has been much discussed and variously decided. He discusses the numerous cases which follow the Massachusetts rule, and hold such indorser to be a joint maker, though now, by statute of 1882, he is entitled, like an indorser, to notice of dishonor; the also numerous cases which hold, as did our courts, such an indorser to be a guarantor; and the cases, in opposition to both of these views, which hold that such indorser contracts and becomes liable as an indorser, his position on the back of the note indicating that intention. In California and Dakota, he adds, (sec. 836,) " he is now by statute liable as an indorser to the payee. And so, by a recent statute in Connecticut, whether the note is negotiable or not, and whether he indorses before or after the payee." Randolph on Commercial Paper, sec. 829 *et seq.*

In *Hall* v. *Newcomb*, 7 Hill, 416, it was held that one who writes his name in blank on the back of a negotiable note before the payee indorses the same, is not liable as maker nor as guarantor. Thus says WOODRUFF, J., in *Hahn* v. *Hull*, 4 E. D. Smith, 670, overruling all the previous cases

to that effect. It was also held in *Hall* v. *Newcomb*, that the person so writing his name could be held liable to such payee as indorser. *Spies* v. *Gilmore*, 1 Comst., 322, is to the same effect. In *Moon* v. *Cross*, 19 N. York, 227, it was held that one who, for the accommodation of the maker, indorses his note payable to the order of a third person, is liable thereon to such payee as indorser. In that case, as in the one at bar, the third party indorsed the paper before it was indorsed by the payee. Thus it would appear that in New York the result reached by our statute was reached through the courts instead of through the legislature. The authorities quoted, by showing the various positions which have been taken respecting the matter under consideration, throw light not only upon the presumed intention of the legislature in passing the statute and the interpretation which should be given it, but show also the impossibility of harmonizing our law, under any interpretation of it, with the law of all our neighboring states.

From this examination of the authorities we feel the more assured in holding that the defendant, in the case at bar, upon the showing of the note itself, is an ordinary indorser, and may be held as such by the plaintiff, who is payee, and whose name appears as an indorser subsequent to that of the defendant.

So much for the contract which the statute imports.

A third question remains, namely, whether the contract which the statute imports can be varied by parol evidence, and, if so, when and how? The general expressions scattered through our reports, consequent upon our peculiar law respecting the contract *primâ facie* implied by the indorsement of a note by a stranger, make it a little difficult to give an answer that shall at first sight appear consistent with some of our decisions, or rather with some of the expressions used in some of our decisions. Indeed, the principle involved has been variously decided in different jurisdictions and at different times in the same jurisdiction.

In *Riddle* v. *Stevens*, 32 Conn., 378, after stating the contract which the law implies from the blank indorsement of

a note by a stranger, the case holds that this implication is however only *primâ facie*, and will yield to proof of the real character of the contract. Notes so indorsed, it says, have not the sanctity of ordinary negotiable paper and do not fall within the rules of the law-merchant; any person taking them, therefore, is put upon an inquiry as to the real character of the contract.

In *Beckwith* v. *Angell*, 6 Conn., 315, a third party wrote his name on the back of a non-negotiable note, under, as he claimed, a special parol agreement with the payee. It was decided that he might prove the special agreement when sued by the payee. The court said:—" The undertaking of an indorser is always collateral, unless made otherwise by a special agreement. But the defendant was not an indorser; because he was neither promisee nor indorsee. His contract was therefore necessarily *special* and whatever the parties chose to make it."

It appears from these and other cases which might be cited, that parol evidence has been admitted to prove the real contract entered into by a third party when he made a blank indorsement of a note, because such blank indorsement only *primâ facie* implied a contract of guaranty; and because, being anomalous and not the ordinary indorsement recognized by the law-merchant, it possessed none of its sanctity, but was its own sufficient notice of its irregularity.

But our courts have not failed to recognize and uphold the sanctity of a regular indorsement. The law on that subject was admirably stated by BUTLER, C. J., in *Dale* v. *Geer*, 38 Conn., 15. That case held " that the contract implied by law from a blank indorsement of a negotiable note before its maturity by the payee, is as certain and absolute as if written out in full, and parol evidence is not admissible to contradict it. This rule is applicable between indorser and indorsee, and it is not competent for the former to prove a cotemporaneous naked agreement that an unrestricted indorsement should be operative as a restricted one only, in bar of an action by the latter." " There are," says the opinion, " four classes of cases, in which, as exceptional

cases, and as between the original parties, indorser and in-
dorsee, any relation, antecedent agreement, or state of facts,
from which a controlling equity arises, may be pleaded and
proved by parol in bar of an action on the warranty. Thus
the relation of principal and agent may be shown, for the
agent takes no title or warranty from the indorser, but holds
as *agent.* So, secondly, it may be shown that the note was
indorsed to the holder for some special purpose, and is holden
*in trust,* as where it is indorsed and delivered for collection
merely. \* \* \* Thirdly, the relation of principal and
surety may be shown, and that the indorsement was made
at the request and for the accommodation of the immediate
indorsee; for the equity of the relation forbids the enforce-
ment of the contract. Such was the case of *Case* v. *Spauld-
ing,* 24 Conn., 578. So, fourthly, it may be shown that there
was an *equity* arising from an *antecedent transaction,* includ-
ing an agreement that the note should be taken in sole reli-
ance on the responsibility of the maker, and that it was
indorsed in order to transfer the title in pursuance of such
agreement, and that the attempt to enforce it is a fraud.
Such was *Downer* v. *Chesebrough,* 36 Conn., 39. These ex-
ceptions illustrate the rule."

In *Allen* v. *Rundle,* 45 Conn., 528, the defendants had
signed a writing on the back of the note as follows:—" For
value received we jointly and severally guarantee the with-
in note good and collectible until paid." Held, that it could ·
not be shown by parol that the defendants, though in form
guarantors, in fact undertook thereby to obligate themselves
to pay the note. Nor that they made at the time a verbal
promise to pay the debt. The court says:—" There is an
anomalous class of cases where a third person, neither payee
nor maker, puts his name on the back of a note before its
indorsement by the payee, where by parol evidence such
person may be held liable either as original promisor, guar-
antor or indorser, according to the nature of the transaction
and the understanding of the parties." (Citing cases).
" But in all these cases the indorsement is in blank and
there is no written contract, and none is definitely implied

by law from the indorsement. In cases of blank indorse ments, where the contract is implied by law, it has the same effect as if written, and parol evidence is not admissible to contradict or vary it. The Supreme Court of Massachusetts, in the recent case of *Allen* v. *Brown*, 124 Mass., 77, held that parol evidence was not admissible to show that indorsers who indorsed a promissory note before delivery to the payee, were accommodation indorsers and sureties only."

In Story on Promissory Notes, sec. 146, note 1, many cases are cited to the point that the contract implied by law, from a regular indorsement, is as certain as if it were expressed in writing, and parol evidence is not admitted to vary it. To the same effect see Daniel on Negotiable Instruments, sec. 717, *et seq.* In Randolph on Commercial Paper, where much attention is given to the subject throughout the work, it is stated, sec. 778, that most authorities hold that the implications and intendments which the lawmerchant has attached to blank indorsements of negotiable commercial paper, render them express and complete contracts which cannot be explained or varied by parol. See also Parsons on Notes & Bills, vol. 2, chap. 1, sec. 6, page 23.

Now, under our statute, the blank indorsement of a negotiable or non-negotiable note, by a person who is neither its maker nor its payee, before or after the indorsement of such note by the payee, can no longer be classed as an anomalous or irregular indorsement, nor will the rules applicable to such indorsements any longer apply. They cease to exist as the reason for them ceases. By the very terms and force of the statute such an indorsement becomes, to all intents, a regular, ordinary indorsement, and the rules applicable to the regular indorsement of negotiable paper apply.

Evidently, then, the judgment rendered by the court below for the plaintiffs in this case was correct. The defendant's case comes within none of the exceptions named in *Dale* v. *Geer*, *supra*. It comes nearest to the third exception. But in the case of *Case* v. *Spaulding*, 24 Conn., 578, given as an example of what was covered by that exception, the note was only apparently commercial paper, regularly indorsed.

In fact the defendant, a stranger to the note, indorsed it in blank at the request of the plaintiff, who afterwards indorsed it over the defendant's name and procured it to be discounted at the bank. As between the parties it was the case of a note indorsed in blank by a stranger, the *primâ facie* import of which was that the indorser would pay it if it could not be collected of the maker by the use of due diligence. But the law permitted the defendant to show the real contract, and he proved that his indorsement was intended as security for the bank only, and was made because the bank would not discount the note for the plaintiff on the security of the maker alone, but required an indorser. So the plaintiff, who was the payee, and the first indorser in order of names, though second in order of time, failed to recover.

In the case at bar the defendant indorsed the notes in the presence of their maker and the plaintiffs before they were delivered. There was no conversation at that time in relation to such indorsement, nor ever any between the plaintiffs and defendant in relation thereto, nor any evidence of any agreement between them different from that which the law imports from the blank indorsement of the defendant under the circumstances stated. Such circumstances certainly indicate that the indorsement was made for the security of the plaintiffs.

At their maturity the notes were duly presented for payment, but were not paid. Due notice of their dishonor was given to the defendant, and subsequently this suit was brought. We see no sufficient reason why, under the statute, the defendant must not be held as an ordinary indorser of negotiable paper.

As the law now stands, if a party intends to contract only as second indorser, he should see to it that the location of his name accords with such intention. If he intends to contract as guarantor or to make any different contract from that of an ordinary indorser, he should write it out above his signature.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.