MINNIE W. HURLBURT *vs.* E. MILES BRADLEY ET AL.

Third Judicial District, New Haven, January Term, 1920.

PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

Under our Negotiable Instruments Act (General Statutes, § 4467)—
which changed the previously-existing law in this State in this re-
spect—the omission of the holder of a note to give due notice of
its dishonor to the indorser, may be waived by the latter; and a
new promise made by the indorser with full knowledge of the facts,
constitutes a waiver and revives his liability on the note.

In the present case no evidence was offered to show that the defendant
indorser knew that the note had not been presented for payment.
*Held* that in this particular instance such knowledge was immate-
rial, inasmuch as the indorser must have known, when he made his
new promise, that he had received no notice of the note's dishonor
and thus manifested his intent to relinquish his known immunity
arising from the laches of the holder.

As a general rule, the burden of proving a waiver rests upon him who
asserts it.

A waiver is the intentional relinquishment of a known right.

Argued January 27th—decided March 5th, 1920.

ACTION by the indorsee against the maker and in-
dorser of a promissory note for $500, brought to the
Court of Common Pleas in New Haven County and
tried to the jury before *Simpson, J.;* verdict for the
plaintiff, which the trial court accepted and rendered
judgment upon as against the defendant Bradley, but
set aside as against the defendant Russell, the indorser,
as against the evidence, and from this decision the
plaintiff appealed. *Error, judgment to be entered against
the indorser.*

On March 20th, 1897, the defendant Bradley, by
his promissory note, promised to pay to the order of
the defendant Russell, $500 six months after date, at
the maker's office, and the defendant Russell indorsed
the note to the plaintiff. The complaint alleges that

at the time of the indorsement it was understood and agreed that the indorser waived presentment and notice of dishonor, and also alleges that the note was not presented for payment at the time and place therein provided, and was not paid at maturity and the plaintiff did not give the defendant Russell notice of nonpayment, and that Russell afterward with full knowledge of these facts promised and agreed to pay the note.

On the trial it appeared that semiannual payments of interest had been made by the maker and indorsed on the note down to March 20th, 1918; that about that time, the plaintiff having demanded payment of the note, the two defendants called at the plaintiff's residence and after some conversation the defendant Russell promised to pay the note. There was a verdict for the plaintiff against both defendants and the trial court, on motion, set aside the verdict as to the defendant Russell, on the ground that there was no evidence which would justify the jury in finding that the new promise was made with knowledge on the part of the defendant Russell that no demand had been made on the maker of the note at maturity.

*Harrison Hewitt* and *Frank R. Goldman*, for the appellant (plaintiff).

*Robert J. Woodruff*, with whom was *Claude B. Maxfield*, for the appellee (defendant Russell).

BEACH, J. No evidence was offered in support of the allegation of an express waiver of the presentment and notice at the time of the indorsement; and the first question is whether a new promise to pay, made by the indorser long after his discharge by omission to make presentment and give due notice of dishonor, re-

vives his liability as indorser, when the promise is made with full knowledge of the laches of the holder.

Until the Negotiable Instruments Act of 1897, the rule in Connecticut was that stated in the headnote to *Huntington* v. *Harvey*, 4 Conn. 124, 125: "The promise of the indorser of a note, payable to a third person, and by him assigned to the holder, to pay such note, made after the indorser had become discharged from his liability, by the laches of the holder, has no legal efficacy, being without consideration." On principle this would seem to follow from the nature of the indorser's contract. The indorser is not a surety. When his contract is expressed by a simple indorsement, he is only secondarily liable. In addition to the implied warranties his contract, as defined in General Statutes, § 4424, is that on due presentment the note shall be paid according to its tenor, and that if dishonored, and the necessary steps on dishonor are duly taken, he will pay the amount thereof to the holder, or to any subsequent indorser who has been compelled to pay it. This is the contract which was implied by law before the statute, and, stated shortly, it is: "A contract for payment conditioned on due presentment to the maker for payment and due notice of dishonor." *Spencer* v. *Allerton*, 60 Conn. 410, 417, 22 Atl. 778.

If the holder fails to perform these conditions, the result is, as stated in § 4447, that "any . . . indorser to whom such notice is not given is discharged." It is true that the word "discharged," as applied to debts and debtors, is used in two senses; it may mean a discharge by performance which puts an end to the obligation as well as to the liability; or it may mean, as in bankruptcy, a personal privilege which leaves the obligation unfulfilled, and hence capable of supporting a new promise. As applied to the contract of indorse-

ment a discharge by failure to give notice of dishonor would seem to leave no obligation on the part of the indorser unfulfilled, and hence to leave no support for a new promise to pay.

It is easy to see why such a promise made after the time for giving notice of dishonor has passed, should be taken as an admission that due notice of dishonor was in fact given, when that fact is in dispute. And when the question is whether the notice was given within a reasonable time, or in a proper manner, such a promise may well be taken as an admission that the notice was reasonable and regular. *Breed* v. *Hillhouse,* 7 Conn. 523, 528. In this case no such question of fact is in dispute. The complaint alleges that the note was not presented for payment and that no notice of dishonor was given. It admits that the indorser was discharged; and it is hard to see how a liability can be created more than ten years afterward by a new promise without fresh consideration.

Nevertheless, it has long been the law in England and in most of the United States that an indorser who has been discharged may make himself liable by a new promise. No satisfactory explanation of this rule has been brought to our attention. Edwards says that an indorser is not bound by a new promise as a matter of contract, for it wants consideration; but he puts it on the ground of "a waiver of the objection that the proper steps have not been taken to charge the indorser." Edwards on Bills & Notes (2d Ed.) * 650. Daniels says that the object of the presentment and notice is to avoid possible injury to the indorser, that the new promise is an assurance that no injury was in fact suffered, and then concludes that the new promise is not a revival of the liability, "but a declaration that there was no ground for the only plea on which it could be discharged." 2 Daniel on Negotiable In-

struments (6th Ed.) § 1147a. Neither of these explanations is consistent with the conditional nature of the indorser's contract. On the other hand, Parsons very frankly admits his inability to explain the rule as applied to indorsers, and suggests that the cases which establish the rule may have arisen with reference to the liability of the drawers of bills who received the money originally and were morally bound to pay. 1 Parsons, Notes & Bills, 612. *Hopes* v. *Alder,* reported in a note to *Darbishire* v. *Parker,* 6 East, 3, 16, bears out this suggestion; but the general effect produced by the earlier cases, collected in the learned opinion of Cowen, J., in *Tebbetts* v. *Dowd,* 23 Wend. (N. Y.) 379, is that the doctrine of waiver after maturity, as applied to indorsers, was adopted under the influence of the law of suretyship and without much regard to the conditional limitations on the contract of indorsement.

But however that may be, our decision is controlled by § 4467, which provides that notice of dishonor may be waived either before giving notice, or after the omission to give due notice, and that the waiver may be express or implied. In the language of the Kentucky court, when confronted with the same situation, we feel that the foregoing provision was intended "to put in force in this State the rule that had theretofore been adopted by a majority of the States." *Mechanics & Farmers' Sav. Bank* v. *Katterjohn,* 137 Ky. 427, 434, 125 S. W. 1071.

The statute puts the revival of liability on the ground of waiver, and in this case waiver by a new promise to pay. To have that effect the promise must have been made with full knowledge of the facts, and the next question is whether the evidence supports the verdict in that respect. The general rule is that the burden of proving a waiver rests upon him who asserts it; and in this case the complaint expressly admits that the

indorser was discharged and expressly alleges a subsequent waiver by a new promise made with full knowledge of the facts. The evidence offered in support of these allegations stops with proof of the new promise and with proof that the note was not presented for payment and that no notice of dishonor was given. It may fairly be said, notwithstanding the lapse of time, that the defendant indorser when he made the new promise knew that no notice of dishonor had been given, for he was the one to be notified. But there is no evidence as to whether he knew that the note was not presented for payment, unless such knowledge or the lack of it is to be inferred from the surrounding circumstances. We think, however, that in this particular case it is quite immaterial whether or not the indorser knew of the failure to present the note. The question is whether the new promise was made with intent to relinquish a known right, or in this case a known immunity arising from the laches of the holder. A new promise made with knowledge of the fact that no notice of dishonor had been given, sufficiently manifests that intent. When the intent to relinquish the immunity is established, the waiver is complete. It adds nothing to prove that the indorser also knew that the note had not been presented for payment, and it detracts nothing to prove that he thought it had been presented. It is sufficient that knowing he was immune from liability because of the holder's laches, he nevertheless promised to pay.

There is error and the cause is remanded with direction to enter judgment against the indorser Russell upon the verdict.

In this opinion the other judges concurred.